UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT ADAMS, III,

                     Plaintiff,

      v.

CORRECTIONS OFFICER JUSTIN TAYLOR,
Groveland Correctional Facility,

                     Defendant.

_____

<u>DECISION & ORDER</u> and
<u>REPORT & RECOMMENDATION</u>

21-CV-6056EAW

Plaintiff Robert Adams, III, acting *pro se*, asserts claims under 42 U.S.C. § 1983 against defendant Corrections Officer Justin Taylor for violating plaintiff's First, Eighth, and Fourteenth Amendment rights. (Docket # 79 (second amended complaint)). The following motions are currently pending before this Court: (1) plaintiff's first motion for an order to compel (Docket # 65); (2) defendant's motion for an order to compel (Docket # 72); (3) plaintiff's letter motion seeking an order imposing sanctions (Docket # 91); (4) plaintiff's second motion for an order to compel (Docket # 127)[1]; (5) defendant's motion for a protective order (Docket # 131)[2]; and, (6) defendant's motion to dismiss (Docket # 141). The Court grants in part and denies in part the pending motions to compel and defendant's motion for a protective

---

[1] Prior to filing his second motion to compel, plaintiff filed two motions seeking a telephone conference with the Court to discuss the adequacy of defendant's responses to plaintiff's second and third discovery demands. (Docket ## 104, 105). Because these issues are fully briefed and before the Court as part of plaintiff's second motion to compel (Docket # 127), the Court denies plaintiff's motions for a telephone conference.

[2] In connection with his opposition to this motion, plaintiff moved for permission to file an oversized responding memorandum of law. (Docket # 139). Plaintiff's memorandum is twenty-four pages, which complies with Rule 7(a)(2)(C) of the Western District of New York's Local Rules of Civil Procedure. *See* Loc. R. Civ. P. 7(a)(2)(C) ("[m]emoranda in support of or in opposition to any motion shall not exceed twenty-five (25) pages in length, and reply memoranda shall not exceed ten (10) pages in length"). Therefore, plaintiff's motion is denied as unnecessary.

order as described more fully below.  The Court denies plaintiff's request for sanctions and recommends that the district court deny defendant's motion to dismiss the case for failure to prosecute.

## FACTUAL BACKGROUND[3]

In November 2019, plaintiff was incarcerated at the Groveland Correctional Facility ("Groveland") where defendant worked as a corrections officer.  (*See* Docket # 79 at ¶¶ 5, 7).  On November 23, 2019, Mardell Hall and Mark Rounds, who were also incarcerated at Groveland, confronted plaintiff while he was using the bathroom and threatened to physically assault him if he continued to use the restroom while other individuals were present.  (*Id.* at ¶¶ 7, 8).  Specifically, Hall pulled out a weapon and said, "Listen faggot, if we catch you in here again, while people are in here, we're gonna blow your head off."  (*Id.* at ¶ 8).

Plaintiff left the restroom and informed defendant of what had occurred and that Hall had a weapon.  (*Id.* at ¶¶ 9, 10).  In response to plaintiff's request that defendant separate him from Hall and Rounds, defendant stated, "I[']m not your bodyguard[;] if you[']re being threatened, be a man[] and defend yourself[.]  [M]a[ybe] if you stopped hanging out with homo's [*sic*], you wouldn't have this problem; people are tired of the gay parade, and personally, so am I."  (*Id.* at ¶¶ 10, 11 (emphasis omitted)).  When plaintiff reiterated concerns for his safety, defendant replied, "You heard what I said[.]  I'm not your bodyguard[;] ma[ybe] if you weren't a 'gay ranger' . . . I'd see what I could do . . . . I won't be wa[]ving a rainbow flag for you[.]  [Y]ou brought this on yourself[;] fight[] or sell some ass, but[] I'm not moving you."  (*Id.* at ¶¶ 11, 12 (emphasis omitted)).  Plaintiff alleges that "gay ranger" is a "demeaning and offensive

---

[3] For the purposes of this motion, the allegations in the complaint are assumed to be true.

term defendant Taylor[] and other [corrections officers] frequently used to characterize inmates in the dorm[] who were a part of the L.G.B.T.Q. community." (*Id.* at ¶ 12).

The next morning, plaintiff attempted to talk to a sergeant about the threats he had received and defendant's response. (*Id.* at ¶ 14). Another corrections officer yelled at plaintiff for trying to talk to a sergeant without first speaking with a corrections officer. (*Id.*). Plaintiff informed the officer that he previously attempted to speak with defendant but was ignored and mocked, to which the officer said, "Well, it must not have been important[;] keep it moving." (*Id.*).

Later that day, Hall shoved plaintiff, called him a "fucking snitch," and threatened that plaintiff "wouldn't be in the dorm much longer, even if he . . . had to be the one to cut" plaintiff. (*Id.* at ¶ 15). Plaintiff informed defendant that he continued to face a threat, feared for his safety, believed he would be attacked soon, and wanted to be removed from the dormitory. (*Id.* at ¶ 16). In response, defendant stated, "I haven't been here for five (5) minutes, and you['re] already crying to me about the boogey man; did you keep your ass through the night[?] [I]t looks like you did[;] nobody touched you, right, though you'd probably like it." (*Id.* at ¶ 17). Plaintiff demanded to speak to a sergeant (*id.*), to which defendant replied, "I'm not bothering [the sergeant] with this gay rights shit[;] I could care less . . . . I'm not doing anything for you, especially after you cried to [the sergeant] this morning, trying to make me look bad" (*id.* at ¶ 18). Plaintiff retorted that if defendant did his job, plaintiff would not need to speak to a sergeant, to which defendant answered, "I'm giving you a direct order to get away from my desk, before I write your ass up for harassment." (*Id.*). Plaintiff walked away. (*Id.* at ¶ 19).

Around 6:30 p.m., defendant and two other corrections officers left the dormitory to watch television. (*Id.* at ¶ 25). While plaintiff was picking up a chess board, Hall punched

him from behind.  (*Id.* at ¶ 28).  Plaintiff put his hands up in self-defense and backed away to his sleeping area.  (*Id.*).  Hall, Rounds, and a third inmate then ran at plaintiff and physically attacked him for five to eight minutes.  (*Id.* at ¶¶ 29, 30, 32 (stating that he was punched, kicked in the face and head, "stomped on," spit on, and cut on his hand and face with a scalpel or can top)).  Eventually, corrections officers returned to the dormitory, and plaintiff was taken to the infirmary.  (*Id.* at ¶¶ 33-35).  Plaintiff was charged with fighting and violent conduct.  (*Id.* at ¶ 39).  The misbehavior report included, or was based on, information provided by a confidential informant.  (*Id.*).

Plaintiff initiated the current action on January 19, 2021.  (Docket # 1).  Plaintiff's Eighth Amendment claims pertain to defendant's alleged failure to protect him from current threats.  (Docket # 79 at ¶¶ 47-50).  Plaintiff also alleges a Fourteenth Amendment claim based upon defendant's purported refusal to protect him on November 23 and 24, 2019, because of plaintiff's actual or perceived sexual orientation.  (*Id.* at ¶¶ 51, 52).  Lastly, plaintiff asserts that, in violation of the First Amendment, defendant retaliated against him for attempting to report defendant's failure to respond appropriately to the initial threat – specifically, by denying plaintiff's request to contact a supervisor on November 24, 2019, refusing to separate plaintiff from Hall and Rounds, and threatening to write a false misbehavior report against plaintiff for harassment.  (*Id.* at ¶ 46).

## DECISION & ORDER

### I.   Motions for Orders to Compel

Currently pending before the Court are three motions seeking orders to compel.  (Docket ## 65, 72, 127).  As a prerequisite to a motion to compel, Rule 37(a)(1) of the Federal

Rules of Civil Procedure requires that the requesting party first confer in good faith with the responding party and include with his motion a certification attesting that the parties have conferred. Fed. R. Civ. P. 37(a)(1). This Court's local rules also require parties seeking judicial intervention to resolve a discovery dispute to include an affidavit "showing that sincere attempts to resolve the discovery dispute have been made." Loc. R. Civ. P. 7(d)(3). The local rules further provide that "[n]o motion for discovery and/or production of documents . . . shall be heard unless accompanied" by such an affidavit. *Id.* "The purpose of the meet and confer requirement is to resolve discovery matters without the court's intervention to the greatest extent possible." *Excess Ins. Co. v. Rochdale Ins. Co.*, 2007 WL 2900217, *1 (S.D.N.Y. 2007). "Only those matters that remain unresolved after serious attempts to reach agreement should be the subject of a motion to compel." *Id.* Therefore, in addressing each of the pending motions to compel, the Court first assesses whether the parties have conferred.

A.    **Plaintiff's First Motion to Compel**[4]

Plaintiff's first motion to compel (Docket # 65) relates to his May 9, 2022 First Demand for Discovery ("May 9 Document Demands" or the "Demands") (totaling seventeen demands) (Docket # 43)[5] and his June 20, 2022 First Set of Interrogatories ("June 20 Interrogatories" or the "Interrogatories") (a set of ten interrogatories) (Docket # 52). On June 27, 2022, because defendant had not timely responded to the May 9 Document Demands in accordance with Rule 34(b)(2)(A) of the Federal Rules of Civil Procedure, plaintiff wrote

---

[4]    In addition to an application for an order to compel, plaintiff's motion includes other requests. First, plaintiff requests oral argument (Docket # 65 at 1), which I deny as unnecessary. Second, plaintiff seeks an extension of the discovery deadline to July 18, 2023. (*Id.* at 24). This request was mooted by the Court's subsequent issuance of an amended scheduling order extending the deadline to July 24, 2023. (Docket # 111). To the extent the parties believe an additional extension is necessary, they must confer and submit a jointly-proposed scheduling order to the Court before the deadline expires. Plaintiff's remaining requests are addressed below.

[5]    The Demands were apparently signed on May 9, 2022 (Docket # 43 at 7) and served on May 10, 2022 (*see* Docket # 65 at ¶ 2).

defense counsel informing her of his position that any objections to the Demands had been waived and providing defendant until July 14, 2022, to provide responses.  (*See* Docket ## 53; 65 at ¶ 4).  On July 5, 2022, defense counsel informed plaintiff that most of the requested documents would be disclosed as part of defendant's Rule 26 initial disclosures due July 25, 2022,[6] and that a separate response to the Demands would be sent once counsel obtained all responsive documents.  (Docket # 54).  In the same letter, counsel requested until August 30, 2022, to respond to the June 20 Interrogatories.  (*Id.*).  On July 11, 2022, plaintiff consented to the August 30, 2022 deadline for responses to the Interrogatories but reiterated his position that any objections to his May 9 Document Demands had been waived.  (Docket # 55 at 2).  On July 20, 2022, defense counsel responded to plaintiff's May 9 Document Demands (Docket # 57), and on July 27, 2022, plaintiff sent defense counsel a letter challenging most of defendant's responses as inadequate (Docket # 60).

On August 9, 2022, prior to the agreed-upon deadline for defendant to respond to the Interrogatories, defense counsel contacted plaintiff to advise that she would not provide further responses to plaintiff's Demands or answer any of the Interrogatories pending the Court's ruling on the then-pending motion to amend.  (*See* Docket # 63).[7]  Plaintiff did not respond to

---

[6] This Court's scheduling order dated May 19, 2022, which was filed following the Court's Rule 16 Scheduling Conference with plaintiff and counsel for defendant, set July 25, 2022 as the deadline for mandatory disclosures.  (Docket # 44).

[7] Plaintiff argues that defense counsel, by sending this letter, "essentially, and without authority, issued a stay of disclosure" and requests that the Court admonish and remind her that she "does not get to dictate the course of discovery," "call the shots," or "restrict plaintiff[']s right[] or ability to move his case forward."  (Docket # 65 at ¶¶ 29, 31) (quotations and emphasis omitted).  Plaintiff is correct that defendant does not have the authority to make unilateral decisions about discovery and must comply with the deadlines set by the Federal Rules of Civil Procedure, receive consent from plaintiff to modify deadlines that are not otherwise specified by court order, or seek judicial relief.  *See Imperati v. Semple*, 2020 WL 4013304, *7 (D. Conn. 2020) ("parties can[not] be cavalier about their discovery deadlines[] or . . . ignore the rules without incurring consequences[;] [i]t is axiomatic that [t]he time limits set forth in the Federal Rules of Civil Procedure are not optional[;] . . . [t]hese time limits are mandatory for all litigants – large or small, public and private, and litigants simply do not have unbridled, unilateral discretion to decide when they will respond to discovery requests[;] . . . [t]he very notion of such a chaotic system would make it impossible for cases to be resolved in a just, speedy, and inexpensive manner") (quotations omitted).

counsel's letter.  Instead, on September 13, 2022, plaintiff filed the current motion disputing the adequacy of most of defendant's responses to the Demands, seeking an order compelling defendant to respond to the Interrogatories, and requesting the Court to deem waived many, if not all, of defendant's objections to both sets of discovery requests.  (Docket # 65).

The next day, although the Court had not yet decided the then-pending motion to amend, defendant responded to plaintiff's June 20 Interrogatories (Docket # 66), which plaintiff contends occurred "sole[ly] as a cause of the filing of the instant motion to compel" (Docket # 87 at ¶ 27).  Additionally, on September 29, 2022, defendant provided supplemental responses to seven of plaintiff's May 9 Document Demands.  (Docket # 71).  In his reply papers, plaintiff persists in challenging the adequacy of the majority of defendant's responses,[8] which now include defendant's responses to the Interrogatories.  (*See, e.g.*, Docket # 87 at ¶¶ 25-37).

Defendant has opposed the motion on the grounds that plaintiff failed to confer in good faith prior to filing the pending motion.  (Docket # 75-1).  Additionally, defendant maintains that "[p]laintiff has failed to specifically identify which responses he contends are lacking and require supplementation" or "address[] the specific objections [that] were raised," that "the underlying discovery casts an extraordinary wide net for discovery, far beyond what is contemplated by the Federal Rules of Civil Procedure," and that defendant cannot produce some

---

[8]  Plaintiff contends that Rule 37 sanctions are warranted because defendant only supplemented his responses to plaintiff's Demands as a result of the current motion.  (Docket # 87 at ¶¶ 20-21).  *See* Fed. R. Civ. P. 37(a)(5) ("[i]f [a] motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees[;] [b]ut the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust").  Specifically, plaintiff requests $500 as compensation for the time he spent researching and writing his motion to compel.  (Docket # 87 at ¶ 21).  Because plaintiff is proceeding *pro se*, he is not entitled to the equivalent of attorney's fees.  *See Gibson v. Heary*, 2020 WL 570604, *2 (W.D.N.Y. 2020); *Brown v. Lian*, 2011 WL 2652342, *3 (W.D.N.Y. 2011).  Although plaintiff may be entitled to incurred *costs* for filing the motion, such as those associated with copying and mailing, he has not alleged or shown such costs.  Therefore, his request for sanctions is denied.

of the requested documents for security concerns. (*Id.*). As to the first assertion, it is simply untrue that plaintiff failed to specify the responses he deemed inadequate or address defendant's objections. (*See*, *e.g.*, Docket ## 60 at ¶ 8; 65). If anything, defendant has not responded fully to the arguments plaintiff has made about the inadequacy or inappropriateness of defendant's objections. I consider the remainder of defendant's arguments below.

### 1.    <u>Conferral</u>

Defendant contends that plaintiff "did not make any attempt to truly 'meet and confer'" prior to filing the motion to compel. (Docket # 75-1 at 3). Specifically, defendant argues that plaintiff: (1) did not reply to defense counsel's August 9, 2022 letter informing plaintiff that she would not produce any further responses to plaintiff's discovery demands due to the then-pending motion to amend (Docket # 63); (2) never requested a conference; and (3) did not make a "genuine effort" to resolve any disputes. (Docket # 75-1 at 3).

Plaintiff contends that his July 27, 2022 letter[9] describing the inadequacies of defendant's initial – and untimely – production satisfied Rule 37(a)(1)'s conferral requirement. He asserts that the letter addressed defendant's objections and clarified the requests that defendant indicated were vague or unclear. (Docket # 87 at ¶ 4). Upon review of plaintiff's July 27, 2022 letter (Docket # 60), I find that plaintiff did attempt to meet and confer with defendant about the perceived inadequacy of defendant's responses to the Demands. The record does not reflect that defendant responded to the July 27, 2022 letter except to inform plaintiff that counsel had unilaterally decided not to provide any additional discovery because of the then-pending motion to amend. These facts, and the specificity of plaintiff's July 27, 2022 letter, demonstrate

---

[9] Defense counsel contends that this letter was illegible and took weeks to transcribe. (Docket # 75-1 at 4). Although the Court has not seen the version defendant received, the Court has had little difficulty reading plaintiff's handwriting.

to the Court that plaintiff viewed his motion for an order compelling supplemental responses to his May 9 Document Demands as "a last resort rather than a first option." *Black v. Buffalo Meat Serv., Inc.*, 2016 WL 4363506, *5 (W.D.N.Y. 2016).

Plaintiff does not directly address, however, whether the parties met and conferred about the June 20 Interrogatories. Muddling the issue, the nature of the required conferral evolved between the filing of plaintiff's initial and reply papers. That is, although plaintiff's motion seeks an order compelling defendant to respond to the Interrogatories in the first instance, plaintiff's reply papers address the adequacy of defendant's responses, which defendant served the day after plaintiff filed his motion. Therefore, the portion of plaintiff's motion seeking an order compelling defendant to respond to the Interrogatories, and the question of whether plaintiff attempted to confer about defendant's failure to initially respond, are moot. *See McFadden v. Williams*, 2022 WL 17126213, *2 (W.D.N.Y. 2022) ("[b]ecause defendants have now provided their initial disclosures, [plaintiff's] request for an order compelling them to do so is moot"). As to the adequacy of defendant's responses, not only are plaintiff's arguments raised the first time in reply, but nothing in the record demonstrates that plaintiff attempted to confer with defendant about those issues. Therefore, I find that plaintiff has not satisfied his obligation to meet and confer as it pertains to the sufficiency of defendant's responses to the June 20 Interrogatories.

### 2. **May 9 Document Demands**

Having found that plaintiff generally satisfied his obligation to meet and confer as to the Demands,[10] I turn to the portion of his motion challenging defendant's responses to them.

---

[10]  Defendant has highlighted several instances in which plaintiff's motion challenges the adequacy of certain responses that plaintiff acknowledged as sufficient in his July 27, 2022 letter. (*See* Docket # 75-1 at 4 (citing Docket # 60)). As to those specific discovery demands, plaintiff failed to confer with defendant prior to filing the

### 3.    <u>Objections</u>

As an initial matter, in his various communications with defense counsel, plaintiff asserted that defendant had waived any objections by failing to timely respond to the May 9 Document Demands.  (*See*, *e.g.*, Docket ## 53, 55).  Although a party's delay in timely responding to discovery requests may result in a waiver of objections, a court retains discretion to excuse the waiver.  *See*, *e.g.*, *Evans v. Murphy*, 2013 WL 2250709, *4 n.6 (W.D.N.Y. 2013) (citing *Ippolito v. Goord*, 2008 WL 2776864 (W.D.N.Y. 2008)); *Callaway Golf Co. v. Corp. Trade Inc.*, 2011 WL 1642377, *2 (S.D.N.Y. 2011); *McKissick v. Three Deer Ass'n Ltd. P'ship*, 265 F.R.D. 55, 57 (D. Conn. 2010).  Here, although defendant's response was served over a month late under applicable Federal Rules of Civil Procedure, no motion to compel was necessary to induce the response.  Moreover, the response was still made early in the discovery period and before even the deadline agreed to by the parties and set by the Court for mandatory disclosures.  On this record, I do not find a waiver of defendant's objections is justified.  *See*, *e.g.*, *Evans v. Murphy*, 2013 WL 2250709 at *4 n.6 (declining to deem objections waived despite untimely response); *Callaway Golf Co. v. Corp. Trade Inc.*, 2011 WL 1642377 at *2 (waiver finding not appropriate where responses were "only twenty-two days late" and "followed promptly" after reminder letter); *McKissick v. Three Deer Ass'n Ltd. P'ship*, 265 F.R.D. at 57 ("the [c]ourt finds that the delay of approximately one month is not sufficiently substantial as to justify the waiver of the defendants' objections, particularly in the absence of any deliberately evasive conduct by the defendants"); *Ippolito v. Goord*, 2008 WL 2776864 at *3 (waiver finding not warranted where defendant not prejudiced by delay and discovery "continued for over a year [after] the answers were filed").

---

instant motion to compel; therefore, as discussed further below, the Court denies plaintiff's motion to compel with respect to those requests but provides guidance to assist the parties in any future conferral.

That said, many of defendant's objections are not well-taken. In response to nearly every demand, defendant lists various objections but produces documents subject to those objections without indicating whether documents were in fact withheld on those grounds. (*See* Docket # 57). For example, defendant objected to nearly every request "to the extent it seeks information and/or documents not in [d]efendant's possession, control, or custody." (*See*, *e.g.*, Docket # 57 at 4). Plaintiff noted that "[t]o the extent defendant asserts the inability to provide the documents based on [his] lack of possession, . . . [because his] counsel has a workable relationship with [the Department of Corrections and Community Supervision ("DOCCS")], she has the practical means[] by which to obtain the identified documents." (*See*, *e.g.*, Docket # 65 at ¶¶ 10, 11). Plaintiff is generally correct. *See Richard v. Dignean*, 2021 WL 5782106, *3 (W.D.N.Y. 2021) ("[c]ourts in this District have held that the relationship between DOCCS and its employees is 'sufficiently closely coordinated' to find that DOCCS employees have control over evidence held by DOCCS"). Although my review of defendant's production suggests that defendant has produced documents from DOCCS, by June 26, 2023, defendant shall supplement his responses by either representing that he has provided responsive documents in DOCCS's custody or by providing those responsive documents in DOCCS's custody that were previously withheld on the basis of this objection. Likewise, defendant must clarify whether documents were withheld on the basis of any of the other stated objections so that plaintiff may determine whether to challenge such objections. *See Wells Fargo Bank, N.A. v. Konover*, 2009 WL 585430, *6 (D. Conn. 2009) ("the party resisting discovery bears the burden of establishing the factual basis for withholding the requested discovery[;] . . . [t]his burden requires an evidentiary showing by competent evidence; . . . [it] cannot be discharged by mere conclusory or *ipse dixit* assertions[;] . . . [w]hen the relevancy of a discovery request has been demonstrated, the party

11

claiming that a discovery request is overbroad or burdensome must show specifically … how each question [or request] is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden[;] [t]he court is not required to sift each interrogatory [or request] to determine the usefulness of the answer [or documents] sought") (quotations omitted).

Additionally, defendant objected to certain demands on the basis of attorney-client privilege without providing a privilege log.  For this reason, plaintiff has requested that the Court deem the attorney-client privilege waived.  (*See*, *e.g.*, Docket # 65 at ¶ 8).  "[W]here parties invoking privilege produce belated and/or inadequate privilege logs, courts have discretion to determine whether to order production of the withheld documents or instead to direct the withholding party to submit an appropriate privilege log."  *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 2017 WL 1232526, *6 (E.D.N.Y. 2017). Exercising this discretion, I require defendant to provide a privilege log for productions (past and future) that complies the Western District of New York's Local Rules of Civil Procedure.  *See* Loc. R. Civ. P. 26(d).  If, upon review of the privilege log, plaintiff believes defendant has improperly invoked a privilege, he must confer in good faith with defendant's counsel; if such conferral does not resolve the dispute, he may move for an order compelling disclosure by the August 28, 2023 deadline for filing motions to compel (*see* Docket # 111).

Defendant appears at times to have cited the attorney-client privilege when in fact his objection or redaction is based upon security or confidentiality concerns.  (*Compare* Docket # 71 at 6 (objecting to request for DOCCS's Prison Rape Elimination Act ("PREA") policy, in part, on the grounds of attorney-client privilege) *with* Docket # 75-1 at 4 (arguing disclosure of some of the PREA information presents security risks)).  Except as otherwise addressed below,

to the extent defendant believes that security or confidentiality concerns justify the withholding

or redacting of documents, defendant must, by June 26, 2023, supplement his discovery

responses with a sworn affidavit explaining those concerns.[11]  (*See*, *e.g.*, Docket # 57 at 5

(response to Request No. 3)).  Upon review of the affidavit, plaintiff may determine whether to

challenge defendant's determinations.  Any motion to compel must be made by no later than

August 28, 2023.  Having addressed these preliminary issues, I now turn to plaintiff's specific

requests.

### 4.    Requests Related to Policies, Procedures, Directives, and Manuals (Requests No. 4, 5, 6, 8,[12] 16)

Request No. 4 seeks all "all documentation regarding the DOCCS policy[] and

practice regarding 'separation orders'" – which plaintiff defines as orders that "that identif[y]

certain prisoners[] as enem[ies] of each other[] and directs that they are to be separated from

each other" (Docket # 43 at ¶ 4 (emphasis omitted)) – in response to which defendant provided

DOCCS Directive # 4948, Protected Custody Status (*see* Docket # 57 at 6).  Plaintiff contends

that Directive # 4948 is insufficient because it relates to individuals placed into protective

custody rather than the policy and procedure related to enemy lists.  (*See* Docket # 65 at ¶ 10).

Defendant supplemented his production, asserting that Directive # 4948 is the only relevant

document and that he is unaware of any other responsive directive.  (Docket # 71 at 5).  Directive

---

[11] Defendant has provided an affidavit from Robert D. Mitchell, Jr., Assistant Commissioner for Correctional Facilities.  (Docket # 75 at 9-11).  This affidavit does not address every instance in which defendant has redacted or withheld documents on the basis of security and safety concerns.  Therefore, unless otherwise directed below, defendant must provide a supplemental affidavit by no later than June 26, 2023, explaining the bases for the redactions or non-disclosure of all responsive documents or categories of documents.

[12] Plaintiff's Request No. 8 sought the DOCCS Health Services Policy Manual.  (Docket # 43 at ¶ 8).  Defendant initially objected to the request and asked plaintiff to identify specific portions of the manual he desired.  (Docket # 57 at 6-7).  In his motion to compel, plaintiff noted that he provided clarification in his July 27, 2022 letter and requested that the Court issue an order compelling defendant to provide the sections specified.  (Docket # 65 at ¶ 17 (referring to Docket # 60 at ¶ 8)).  Defendant thereafter provided a supplemental production that appears to have provided the outstanding documents (Docket # 71 at 5), and plaintiff has not contested the production in his reply papers about this demand.  The dispute concerning defendant's response to Request No. 8 thus appears moot.

# 4948 does not explicitly refer to the circumstances authorizing or permitting use of an enemy or "keep away" list and the consequences of such a list.  Therefore, by June 26, 2023, defendants must either confirm in writing no such responsive documents exist or make a supplemental production.

Request No. 16 seeks policies, procedures, and directives related to gathering evidence as part of a fight investigation.  (Docket # 43 at ¶ 16).  According to plaintiff, defendant produced the fight investigation sheet related to the November 24, 2019 incident and a "heavily redacted" DOCCS Directive # 4004, Unusual Incident Report, but failed to produce the requested policies and procedures relating generally to fight investigations.  (Docket # 65 at ¶¶ 22-23; *see also* Docket # 60 at ¶ 16).  Defendant failed to respond to plaintiff's arguments in his opposition to plaintiff's motion.  Therefore, the Court directs defendant, by June 26, 2023, to produce responsive documents concerning the "policies, procedures, and directives to be followed by an officer, . . . sergeant, l[ie]utenant, etc., when gathering evidence relative to a 'fight investigation'" or confirm in writing that no such responsive documents exist.  If defendant has already produced responsive documents, he must identify them by bates numbers.  If defendant believes in good faith that disclosure would present undue security risks, he may submit a sworn affidavit, by no later than June 26, 2023, explaining the bases for the concerns.

As defendant notes, plaintiff previously informed him that his production in response to two of the policy-related demands were adequate, although plaintiff now challenges defendant's responses to those demands in the current motion to compel.  As to Requests No. 5 and 6, the Court reiterates that the parties must confer before seeking judicial intervention.  In light of this history, the Court directs the parties to confer about the specific documents plaintiff

contends have been improperly withheld.  (*See* Docket # 65 at ¶¶ 11, 12).  No further motion to compel may be filed before the required conferral takes place.

     **5.**     <u>**Requests Related to Defendant's Personnel File (Requests No. 1, 2)**</u>

     Plaintiff's Requests No. 1 and 2 seek defendant's entire personnel file, including his job application; information and documents relating to his hiring and training; performance evaluations; disciplinary records and proceedings; complaints by other officers, prisoners, or civilians; and any Office of Special Investigations/Internal Affairs files regarding defendant. (Docket # 43 at ¶¶ 1, 2).  Defendant initially provided some documents "to the extent [he deemed they] relate[] to this particular matter" (Docket # 57 at 4-5) and, after plaintiff filed the current motion, supplemented his production (Docket # 71 at 4-5).  In his reply papers, plaintiff states that defendant provided previously withheld performance evaluations but that the production "is incomplete[] to the extent that[] defendant has failed to provide any[] and all mental health records" that "more than likely exist.  (Docket # 87 at ¶ 16).

     Plaintiff seeks defendant's mental health records on the grounds that "defendant['s] conduct towards plaintiff between the dates of 11/23/19 and 11/24/19, demonstrates that, he may have 'anger issues,' or other mental health issues, which influenced his conduct towards plaintiff."  (Docket # 65 at ¶ 7).  The caselaw plaintiff relies upon in support of his position is inapposite.  For example, in *Gross v. Lunduski*, 304 F.R.D. 136, 162 (W.D.N.Y. 2014), the plaintiff pled an excessive force claim with "very specific allegations, including corroborative medical documentation, [that] indicated that the sequence of events leading to [p]laintiff's injuries could well have resulted from [d]efendant's assaultive reaction[,] . . . a response which could conceivably have been the product of [d]efendant's difficulty in anger control when confronted with an inmate's apparent affront to [d]efendant's authority."  In

contrast, plaintiff here asserts a failure to protect claim, and plaintiff's request for defendant's mental health records (even assuming they exist in his personnel file) "are too attenuated from his claims to be discoverable" as "[a]ny connection between the issues raised in this litigation and unspecified mental health, stress or anger management issues of . . . defendant[] is speculative at best." *Sileo v. Schuck*, 2010 WL 811321, *3 (W.D.N.Y. 2010). Plaintiff's request for an order compelling defendant to produce mental health records within his personnel file is thus denied.

### 6.    Remaining Requests (No. 7, 9, 10,[13] 13, 17)

Request No. 7 seeks the floor plan or cube layout for Groveland's Housing Unit K, K3 dormitory. (Docket # 43 at ¶ 7). Defendant has objected to this request as confidential and has provided Assistant Commissioner Mitchell's affidavit explaining that such information could be used to thwart internal security systems and take advantage of perceived weaknesses. (*See* Docket # 75 at 10). Courts generally deny requests for prison floor plans on the basis that disclosure presents significant security risks. *See Allen v. Eckard*, 2019 WL 1099001, *3 (M.D. Pa. 2019) ("many courts have emphasized the security risks that are apparent from an inmate-plaintiff possessing a floorplan or diagram of the inside of a prison") (citing cases). I agree and find that defendant has sufficiently demonstrated a justifiable reason to withhold production of the K3 dormitory floor plan.

In the alternative, plaintiff requests appointment of counsel for the "purpose . . . [of] record[ing] and tak[ing] photographs[] and measurements of the area where plaintiff[']s physical attack occurred." (Docket # 65 at ¶ 16 (emphasis omitted)). That request is denied;

---

[13] Request No. 10 seeks color photographs of plaintiff's injuries. (Docket # 43 at ¶ 10). Defendant has complied with this request, both in his initial and supplemental production. (*See*, *e.g.*, Docket ## 57 (Exhibit 5); 71 (Exhibit 5)). Therefore, the Court denies this request as moot.

instead, by June 26, 2023, defendant shall permit plaintiff or an agreed-upon designee to take photographs of the relevant area; alternatively, defendant may confer with plaintiff about the requested photographs and elect to take and provide them to plaintiff. *See Hill v. Payne*, 2023 WL 2342892, *12 (W.D.N.Y. 2023) (requiring defendant to allow plaintiffs to inspect the property under appropriate supervision or elect to take and provide photographs).

Request No. 9 seeks statistics concerning the number of prisoner-on-prisoner assaults in housing units K1-3 from January 1, 2018 through November 25, 2019. (Docket ## 43 at ¶ 9 (originally requesting statistics from January 1, 2015 through December 13, 2019); 60 at ¶ 9 (modifying timeframe to January 1, 2018 through November 25, 2019)). In his supplemental production, defendant appears to have produced responsive documents from January 1, 2019 to November 13, 2019, but has failed without explanation to produce documents from January 1, 2018 to December 31, 2018. The Court directs defendant to produce the relevant documents from January 1, 2018 and December 31, 2018.[14]

Request No. 13 seeks the "misbehavior reports[] and subsequent disciplinary dispositions of [i]nmates Mardell Hall, . . . Mark Rounds, . . . [and] Brandon Anderson, . . . relative to their assault on plaintiff." (Docket # 43 at ¶ 13). Defendant has refused to provide any documents responsive to this request on the basis that they are irrelevant and disclosure would violate the privacy of others and pose a security and safety risk. (Docket ## 57 at 8; 75-1 at 4). Defendant is correct that the disciplinary dispositions related to the November 24, 2019 alleged assault do not appear relevant to plaintiff's claims that defendant failed to protect him.

---

[14] Defendant initially responded to this demand by providing plaintiff with documents related to plaintiff's alleged assault. (Docket # 57 (Exhibit 1)). This included a "free-will statement" made by another inmate about plaintiff. (*Id.* at 21). In response, plaintiff requested that defendant disclose the identity of the individual who made the free will statement. (Docket # 65 at ¶ 18). The Court instructs defendant to respond to that request. To the extent that he contends that the information cannot be disclosed for security reasons, he must so state and explain by sworn affidavit the basis for the security concerns.

*Cf. Farmer v. Brennan*, 511 U.S. 825, 842-43 (1994) ("if an Eighth Amendment plaintiff

presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive,

well-documented, or expressly noted by prison officials *in the past*, and the circumstances

suggest that the defendant-official being sued had been exposed to information concerning the

risk and thus must have known about it, then such evidence could be sufficient to permit a trier

of fact to find that the defendant-official had actual knowledge of the risk") (quotations omitted

and emphasis added); *Williams v. Murphy*, 2015 WL 1971517, *2 (D. Conn. 2015) ("[a]lthough

the objection by defense counsel . . . on the ground of safety and security is reasonable, that

legitimate concern cannot be allowed to stand in the way of the plaintiff's need to discover

evidence pertinent to his claims[;] . . . if plaintiff can prove that the defendants were on notice

that [the attacking inmate] had previously assaulted other inmates, that will likely bolster, or at

least be relevant to, his deliberate indifference claim"). The misbehavior reports, by contrast,

may contain evidence relevant to the claims because they presumably reflect factual accounts of

the assault. Therefore, the Court grants the request for production of the misbehavior reports and

denies the request for the disciplinary dispositions relating to the November 24, 2019 alleged

assault.

Request No. 17 seeks documents in plaintiff's own file regarding his security

classification. (Docket # 43 at ¶ 17). Plaintiff contends that this request encompasses an

unredacted copy of his "enemy list" and his inmate overview sheet. (Docket ## 60 at ¶ 17; 65 at

¶ 24). In response, Assistant Commissioner Mitchell alleges that plaintiff's security

classification and enemy list cannot be disclosed for safety and security reasons. (Docket # 75 at

11). The relevance of plaintiff's security classification, his inmate overview sheet, and the

names of all individuals on plaintiff's keep away list is not clear. What does appear clearly

relevant, however, is the presence or absence of any of the individuals who allegedly attacked plaintiff on plaintiff's "keep away" list prior to November 24, 2019. Therefore, by June 26, 2023, defendant is directed to produce a redacted copy of plaintiff's keep away list as of November 24, 2019, or to confirm in writing that a diligent search has been conducted and no responsive documents exist.

### 7. June 20 Interrogatories

As stated above, because defendant has responded to plaintiff's June 20 Interrogatories, plaintiff's motion for an order compelling defendant's response is denied as moot. To the extent plaintiff's reply papers raise issues regarding the adequacy of the responses, the record does not reflect that the parties have conferred or attempted to confer before seeking judicial intervention. Moreover, having reviewed plaintiff's reply papers, I expect that the parties may be able to resolve some, if not all, of the issues upon conferral. Plaintiff's motion for an order compelling defendant to supplement his answers to the Interrogatories is denied without prejudice.

I offer some general guidance to assist the parties in their conferral. First, an interrogatory should not include argument (*see*, *e.g.*, Docket # 52 at ¶ 7 (referring to the attack as vicious, readily visible, and loud)), and a challenge to the accuracy of an answer is not a basis for court intervention (*see*, *e.g.*, Docket # 87 at ¶ 35). Second, although counsel's August 9, 2022 letter indicating defendant's intention to defer responding to the Interrogatories pending a decision on plaintiff's motion to amend was not justified, defendant in fact responded to the Interrogatories only two weeks after the agreed-upon deadline, and before the Court issued its decision on the motion to amend. On this record, defendant's delay does not appear to justify a finding of waiver of his objections. Plaintiff is correct, however, that defendant must serve

sworn responses that comply with Rule 33(b).  *See, e.g.*, *Nowlin v. Lusk*, 2014 WL 298155, *9 (W.D.N.Y. 2014) ("Rule 33(b)(5) requires the [a]nswers be signed by the person making the answer and signed by counsel for any objections raised therein").

### 8.   Request for Appointment of Counsel

In addition to requesting counsel for the limited purpose relating to Request No. 7, plaintiff's notice of motion states more generally that he seeks appointment of counsel. (Docket # 65 at 1).  Construing plaintiff's motion liberally, the Court interprets it to include a request for a full-scope appointment of counsel.  It is well-settled that there is no constitutional right to appointed counsel in civil cases.  Although the court may appoint counsel to assist indigent litigants pursuant to 28 U.S.C. § 1915(e), *see, e.g.*, *Sears, Roebuck and Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988), such assignment of counsel is clearly within the judge's discretion.  *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).  The factors to be considered in deciding whether to assign counsel include the following:

1. Whether the indigent's claims seem likely to be of substance;

2. Whether the indigent is able to investigate the crucial facts concerning his claim;

3. Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;

4. Whether the legal issues involved are complex; and

5. Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986).

The Court must consider carefully the issue of appointment of counsel because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer

lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989). Therefore, the Court must first look to the "likelihood of merit" of the underlying dispute, *Hendricks v. Coughlin*, 114 F.3d at 392; *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and his chances of prevailing are therefore poor." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

The Court has reviewed the facts presented herein in light of the factors required by law and finds, pursuant to the standards promulgated by *Hendricks*, 114 F.3d at 392, and *Hodge v. Police Officers*, 802 F.2d at 61-62, that the appointment of counsel is not warranted at this time. As stated above, a plaintiff seeking the appointment of counsel must demonstrate a likelihood of success on the merits. *See id.* Plaintiff has failed to do so at this time. Moreover, the legal issues in this case do not appear to be complex, and plaintiff has drafted a complaint and two amended complaints, filed motions supported by facts and caselaw, and communicated with the Court and counsel regarding his case. (*See*, *e.g.*, Docket ## 1, 79, 60, 65). Plaintiff's conduct in prosecuting this matter strongly suggests that he is capable of understanding and handling the litigation. *See McLean v. Johnson*, 2017 WL 4157393, *1 (W.D.N.Y. 2017) (incarceration alone does not warrant the appointment of counsel). Finally, plaintiff's case does not present any special reasons justifying the assignment of counsel. On this record, plaintiff's request for the appointment of counsel (Docket # 65) is denied without prejudice at this time. It is plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se.* *See* 28 U.S.C. § 1654.

### B.    Defendant's Motion to Compel

On or about July 28, 2022, plaintiff signed a release form[15] allowing defendant to receive plaintiff's medical information from June 2019 to June 2020.  (*See* Docket # 72-1 at 4). On August 2, 2022, plaintiff sent counsel a letter rescinding his authorization.  (*Id.* at 4-6). Defendant now seeks an order compelling plaintiff to permit defendant's use of the signed July 2022 HIPAA authorization form.  (Docket # 72).

### 1.    Conferral

Defense counsel contends that she made a good faith effort to confer with plaintiff by sending him a letter on September 14, 2022, contending that defendant should be able to obtain plaintiff's medical information in accordance with the signed HIPAA authorization. (Docket # 72-2 at 1 (referring to Docket # 67)).  Upon review of the September 14, 2022 letter that was contemporaneously filed on the docket (Docket # 67), and defendant's representation that plaintiff never responded, the Court finds that defendant attempted to meet and confer and thus has satisfied his obligation under Rule 37(a).

### 2.    HIPAA Authorization

In support of his motion, defendant argues that he is "entitled to obtain medical documents related to the [November 24, 2019] incident pertaining to both physical injuries, which [p]laintiff alleges in his complaint, and mental health records[,] . . .  as [plaintiff] claims he suffered and continu[es] to suffer from severe mental and emotional distress." (Docket # 72-2 at 2).  Although plaintiff concedes that defendant has "a right to discover medical records[]

---

[15]  Although the signed release is not before the Court, the parties have referred to the document as plaintiff's "HIPAA authorization."  (*See*, *e.g.*, Docket ## 72-2; 80).  Such forms, if executed, generally allow third parties to receive medical information about an individual that medical providers would otherwise be prohibited from releasing under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  *See generally* 42 U.S.C. § 1320d-6 ("[a] person who knowingly and in violation of this part . . . discloses individually identifiable health information to another person[] shall be punished . . . [if the individual] disclosed such information without authorization").

relative to the claims[] and injuries identified in the complaint," he maintains that the signed release form authorizing disclosure of his health information from June 1, 2019 to June 1, 2020, is overbroad and that defendant has not demonstrated the relevance of medical information predating the alleged assault and unrelated information postdating the alleged assault. (Docket # 80 at ¶¶ 6, 7, 8 (emphasis omitted)). Plaintiff is willing, however, to sign a HIPAA authorization form allowing the release of his medical records from November 24, 2019 to January 1, 2020. (*Id.* at ¶ 11).

Contrary to disclosure of information about his physical condition and injuries, plaintiff opposes disclosure of any of his mental health records. (*Id.* at ¶¶ 14-21). He argues that he did not waive the psychotherapist-patient privilege by alleging that he suffered emotional distress and that he has asserted only garden variety mental distress damages, which do not put his mental health at issue. (*Id.* at ¶¶ 14-16, 20). To the extent this Court finds otherwise, plaintiff wishes to abandon his claim for emotional damages. (*Id.* at ¶ 21).

In his reply, defendant did not directly respond to plaintiff's willingness to execute a narrower HIPAA authorization. (*See* Docket # 85 at ¶ 2 ("[d]efendant is interested in obtaining medical records to know the nature, the timing and related further details about the physical injuries [p]laintiff allegedly claims he has suffered because of the alleged incident")). In the absence of any argument by defendant as to why a broader release is justified, the Court denies defendant's request to use the July 2022 signed HIPAA release. However, defendant is directed to promptly provide plaintiff, and plaintiff is directed to promptly sign, a HIPAA release authorizing disclosure to defendant of plaintiff's medical records from November 24, 2019 to January 1, 2020.[16]

---

[16] Plaintiff stated in his sworn opposition that he did not receive treatment for any physical injuries related to the November 24, 2019 alleged assault after November 25, 2019, but nonetheless indicated he would permit

23

As to the scope of the emotional distress damages that plaintiff seeks, defendant argues that plaintiff has alleged severe and continuous mental and emotional distress[17] and that defendant is entitled to plaintiff's mental health records from June 1, 2019 to June 1, 2020, to obtain information about plaintiff's mental health status before and after the incident. (*Id.* at ¶ 3). "In this context, 'garden variety' refers to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of the challenged actions." *Morales v. Pepsi Co. Inc.*, 2018 WL 3853390, *4 (W.D.N.Y. 2018); *see also Feltenstein v. City of New Rochelle*, 2018 WL 3752874, *5 (S.D.N.Y. 2018) ("[t]hese allegations can be substantiated by [p]laintiff's testimony, through which she can describe her injury in vague or conclusory terms without relating either the severity or the consequence of the injury[;] [plaintiff's] allegations also lack the extraordinary circumstances warranting support by any medical collaboration, and thus, are garden-variety claims of emotional distress[,] . . . [such that] she had not put her mental condition at issue, thus barring disclosure of the subject mental health records").

On this record, plaintiff has two options. To the extent that he seeks damages for non-garden variety emotional distress, including trauma and severe anxiety as alleged in his

---

release of his medical records from November 24, 2019 to January 1, 2020. (Docket # 80 at ¶¶ 10, 11). The Court, in any event, finds the temporal scope of the proposed release to be appropriate.

[17] Plaintiff alleges in his complaint:

> As a result of [the] assault, [plaintiff] suffered, and continues to suffer from severe mental[] and emotional distress. To this very day, plaintiff continues to suffer from reoccur[r]ing nightmares of the assault[;] said nightmares cause plaintiff to suffer from panic[] and anxiety attacks. Plaintiff is very 'leery,' and suspicious of other inmates more than he used to be, and is constantly paranoid that[] they're planning a sneak attack on him. [B]ecause of this, plaintiff is constantly on guard, more than what may be necessary. Plaintiff[']s paranoia[] and anxiety[] has had a significant impact on his emotional[] and mental well[-]being.

(Docket # 79 at ¶ 41).

complaint (*see* n.17 *supra*), records reflecting mental health conditions and treatment would be relevant and discoverable, and he must promptly provide defendant's counsel a HIPAA authorization permitting his treatment providers, including mental health providers, to release his mental health records from June 1, 2019 to June 1, 2020.  To the extent plaintiff wishes to confine his claim for damages to garden variety emotional distress damages only, plaintiff must submit to the Court, on or before June 26, 2023, a sworn affidavit attesting to the following representations:

> 1.      He understands that his claim for emotional distress damages is limited to "garden variety" emotional distress damages, meaning nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of the challenged actions;
>
> 2.      He will not claim at trial that he suffered severe emotional distress or a diagnosed mental health condition;
>
> 3.      He will not offer at trial any psychological or medical testimony or records to support his claims of emotional distress, including his own testimony that he sought treatment from a mental health professional; and,
>
> 4.      He withdraws any prior claim for non-garden variety emotional distress damages.

*See Morales v. Pepsi Co. Inc.*, 2018 WL 3853390 at *4.

### C.     <u>Plaintiff's Second Motion to Compel</u>

Plaintiff's second motion to compel (Docket # 127) relates to his September 20, 2022 Second Demand for Discovery ("September 20 Demands" or "Second Set of Demands") (totaling twenty-four demands) (Docket # 70) and his October 4, 2022 Third Demand for Discovery ("October 4 Demands" or "Third Set of Demands") (totaling ten demands) (Docket # 77).  Plaintiff contends that defendant has willfully and unreasonably withheld responsive documents (Docket ## 89; 96; 127 at ¶ 3); defendant counters that plaintiff has sought

documents that are either irrelevant or cannot be disclosed for security reasons (Docket # 138 at ¶ 6).[18]

## 1.    Conferral

On November 9, 2022, plaintiff sent defense counsel a letter regarding the alleged inadequacy of defendant's responses to plaintiff's Second and Third Sets of Demands.  (Docket # 100).  On November 22, 2022, counsel responded to plaintiff's letter by reasserting defendant's objections.  (Docket # 102).  Defendant does not contend that plaintiff failed to confer, and, upon review of plaintiff's letter, I find that plaintiff has complied with his obligation under Rule 37 to address discovery disputes with opposing counsel before seeking judicial intervention.

## 2.    Second and Third Sets of Demands

Plaintiff maintains that defendant has insufficiently responded to twelve of his September 20 Demands and five of his October 4 Demands.  Defendant replies that those requests seek disclosure of irrelevant documents and other information that presents genuine security concerns.[19]  (Docket # 138 at ¶ 6).

The Court finds that the following requests are irrelevant to the pending claims against defendant:

1.  **Request No. 2 of the Second Set of Demands**:  Produce the NYS DOCCS [p]olicy[] and procedure regarding the construction of a "photographic array"[] for purposes of identifying the perpetrator(s) of an assault[] or any other offense necessitating[] the construction of said array[] for purposes of identification.

2.  **Request No. 11 of the Second Set of Demands**:  Produce the NYS DOCCS [p]olicy[] and procedure relative to conducting[] and completing a disciplinary hearing.

---

[18]  In connection with defendant's motion for a protective order, *see infra*, the Court addresses defendant's contention that plaintiff has "embarked on a path intended to intimidate [and] harass the [d]efendant and defense counsel by submitting [an] excessive number of discovery demands."  (Docket # 138 at ¶ 9).

[19]  In his opposition papers, defendant mischaracterized several of plaintiff's demands.  (*Compare* Docket # 138 at ¶ 6(a), (d) *with* Docket # 127-1 at ¶¶ 2, 6).

3. **Request No. 15 of the Second Set of Demands**:  On 11/25/2019, Sgt. J. [H]ermann-[M]yers submitted a request for [a] urinalysis test[] for Robert Adams, III[;] . . . said request was approved by [Groveland Lieutenant] R. Stickel[] on 11/25/2019.  (1) What are the procedures to be followed by an employee at [Groveland] when requesting that an incarcerated person be subjected to said test?  (2) What factors are to be considered by the person requesting the test[?]  (3) What does the approval process entail?  (4) How is the specimen tested, and what system does DOCCS currently use[] to test urine samples?  Provide any[] and all directives, policies, and procedures relative to[] and which explain the above.

4. **Request No. 16 of the Second Set of Demands**:  Produce the actual urinalysis test results for Robert Adams, III . . . dated 11/25/2019.

5. **Request No. 24 of the Second Set of the Demands**:  Produce the personnel file of non-party witness[] and [Groveland Sergeant] "J. [H]ermann Myers." Request for records include, but are not limited to[,] (1) job application seeking employment with the N.Y.S. DOCCS, (2) performance evaluations, (3) disciplinary records/proceedings[,] (4) training records, (5) records of complaints filed by prisoners[] and coworkers, [and] (6) any and all O.S.I./Internal Affairs, I/A files.

6. **Request No. 10 of the Third Set of Demands**:  Produce any[] and all documents identifiable as documents concerning the "Critical Incident Stress Management Program" as identified in the personnel file (personal history folder) of defendant Justin Taylor (emphasis omitted).

Although most of these demands appear to relate generally to events that occurred in the aftermath of plaintiff's alleged assault, the requested documents and information are nonetheless irrelevant to plaintiff's *claims*.  *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . [and] the importance of the discovery in resolving the issues").  Additionally, the latter two requests resemble a "fishing expedition."  Plaintiff contends that he is entitled to Sergeant Hermann-Myers' personnel file for reference during her cross-examination.  (Docket # 127 at ¶ 18).  He also maintains that he is entitled to documents concerning the employee critical incident stress management program on the grounds that defendant "did not respond well

27

to" the "critical incidents" that plaintiff's reports posed.  (*Id.* at ¶ 23).  "Discovery requests

cannot be based on pure speculation or conjecture."  *Tottenham v. Trans World Gaming Corp.*,

2002 WL 1967023, *2 (S.D.N.Y. 2002).  Plaintiff has not adduced evidence warranting

inspection of Sergeant Hermann-Myers' personnel file or disclosure of records relating to

DOCCS's stress management program; in fact, plaintiff has alleged that defendant failed to

protect him, not because he reacted poorly to a stressful situation, but because of defendant's

hostility towards plaintiff based upon plaintiff's actual or perceived sexual orientation (*see*

Docket # 79 at ¶ 52).  *See Pothen v. Stony Brook Univ.*, 2017 WL 1025856, *4 (E.D.N.Y. 2017)

("[a]lthough [p]laintiff may speculate[] that [such discovery] might reveal useful material, such

speculation is not a basis for this [c]ourt to compel discovery") (quotations omitted).  The Court

denies plaintiff's motion to compel with respect to these demands.

       The Court next addresses those requests to which defendant objects on the

grounds of security concerns:

1. **Request No. 6 of the Second Set of Demands**:  Produce the NYS DOCCS policy, and procedure(s), relative to the receipt, and evaluation of confidential information, given by a "confidential informant," relative to a fight investigation, etc., or a disciplinary hearing.

2. **Request No. 7 of the Second Set of Demands**:  Produce "unredacted copies" of the fight investigation completed on 11/24/2019 by J. [H]ermann Myers, Sgt., to [Lieutenant] J. Cullinan.

3. **Request No. 21 of the Second Set of Demands**:  Produce the [Groveland] "watch commander log"[] relative to the assault upon Robert Adams, III . . . and the subsequent investigation thereafter.  Produce Directive # 4008, as relative to this request.[20]

---

[20] Defendant initially failed to respond to the request for the watch commander log, even after receiving plaintiff's good faith letter highlighting defendant's lack of response.  (*See* Docket ## 89, 102).  For the first time, in his opposition to the motion to compel, defendant raises security concerns related to disclosure of the log.  (Docket # 138 at ¶ 6(h)).  As to the request for Directive # 4008, defendant has stated that plaintiff may review a redacted version of the directive in a controlled setting.  (Docket # 138 at ¶ 6(q)).  Defendant must, by June 26, 2023, further explain his withholding of the watch commander log and redactions to Directive # 4008; if plaintiff is dissatisfied with that explanation, he must confer with counsel in a good faith attempt to resolve the dispute before filing another

4. **Request No. 23 of the Second Set of Demands**:  Produce the "Unusual Incident Reporting System (UIRS) Manual."[21]

5. **Request No. 1 of the of the Third Set of Demands**:  Produce by [Facility Operations Manual] title, and number, a complete list of all "Facility Operations Manuals" maintained by Groveland.

6. **Request No. 2 of the Third Set of Demands**:  Produce, without redaction(s), the Groveland[] Employees Orientation Manual.[22]

To the extent that defendant has withheld documents or made redactions to materials produced in response to these demands, the Court instructs defendant, by June 26, 2023, to provide an affidavit fully explaining the bases for concluding that disclosure of the redacted or withheld documents presents an unacceptable security risk.  If plaintiff is dissatisfied with that explanation, he must confer with counsel in a good faith attempt to resolve the dispute before filing another motion to compel.

I turn now to Requests No. 4, 5, and 22 of the Second Set of Demands and Requests No. 3 and 7 of the Third Set of Demands.  Request No. 4 of the Second Set of Demands seeks the "master index" of records and documents maintained at Groveland.  Defendant has stated that a master index does not exist; he has also objected to the request on the

---

motion addressing the requests.  Defendant is encouraged to carefully consider whether the log may be produced in redacted form.

[21] Defendant initially responded to this demand by claiming that no responsive documents exist and that "[a]ny reporting manual related to this request cannot be disclosed due to possible security risks."  (Docket # 89 at 10).  For the first time, in opposition to the motion, defendant contends that this request is irrelevant to the complaint.  (Docket # 138 at ¶ 6(j)).  I overrule defendant's relevancy objection insofar as such a manual may indicate that corrections officers are required to file unusual incident reports when they learn that an inmate has been threatened and/or that another inmate possesses a weapon.  Therefore, defendant is instructed to produce by June 26, 2023, responsive documents if they exist relating to the issue of reports by an inmate of threats or weapons possession by another inmate, or confirm in writing that a diligent search has been conducted and responsive documents do not exist.  To the extent defendant believes in good faith that redactions of his supplemental production are necessary, he must provide an affidavit with a full explanation justifying those redactions.

[22] In his motion, plaintiff clarifies that he is seeking documents reflecting "how an officer is to conduct him/herself while on the job[] and when dealing with, and responding to, problems that arise."  (Docket # 127 at ¶ 20).

grounds that such request is irrelevant and overbroad. (Docket # 138 at ¶ 6(b)). I agree. Plaintiff is not entitled to a complete listing of every document maintained at the correctional facility to determine whether he wants to demand its production. The objection is sustained.

Request No. 5 of the Second Set of Demands seeks the complete disciplinary history and criminal conviction records of Mardell Hall, Mark Rounds, and Brandon Anderson. Defendant counters that the disciplinary and criminal histories of the named individuals "are completely irrelevant." (Docket # 138 at ¶ 6(c)). I disagree in part. To the extent Hall's and Round's disciplinary and/or criminal histories reflect incidents of possession of weapons while incarcerated or incidents of threats or violence towards LGBTQ individuals – and defendant was aware of that history – the requested records may be relevant. Anderson's disciplinary and criminal history, by contrast, is not. Plaintiff has not alleged that Anderson threatened him prior to the attack or that defendant had reason to believe Anderson would assault plaintiff. By June 26, 2023, defendant must produce Round's and Hall's disciplinary and/or criminal histories to the extent they reflect incidents that occurred prior to plaintiff's alleged assault of weapons possession in jail and/or LGBTQ-related threats or violence, or confirm in writing that a diligent search has been conducted and responsive documents do not exist.[23] To the extent responsive documents are produced, they may be redacted as described, and plaintiff may not disclose those records or information to any other person absent permission from the Court.

Request No. 22 of the Second Set of Demands seeks unusual incident reports documenting the alleged assault against plaintiff and documents reflecting the subsequent

---

[23] In his original objections, defendant invoked New York Public Officers Law § 96 as a basis for withholding the requested disciplinary and criminal records. (Docket # 89 at 5). Because plaintiff's claims are grounded in federal law, the statute is not directly applicable. *See* Fed. R. Evid. 501 ("[t]he common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege"); *Moore v. Peters*, 2016 WL 4939569, *2 n.1 (W.D.N.Y. 2016) ("state law of[] confidentiality is not binding in federal civil rights actions, where plaintiff is able to make a threshold showing of relevance and particularity"), *reconsidered in part on other grounds*, 2017 WL 4217173 (W.D.N.Y. 2017).

investigation.  Defendant contends that he has provided all responsive documents.  (Docket # 138 at ¶ 6(i)).  Plaintiff contends that defendant provided the fight investigation documents but not the unusual incident reports.  (Docket # 127 at ¶ 16).  By June 26, 2023, defendant shall identify by bates numbers the unusual incident reports produced.  To the extent all responsive unusual incident reports have not been produced, by June 26, 2023, defendant shall produce all such reports or confirm in writing that a diligent search has been conducted and that no such documents exist.

Request No. 3 of the Third Set of Demands seeks production of Directive # 2605, "Sexual Harassment in the Workplace."  Defendant asserts in his opposition to the motion that he "already provided a relevant directive to [p]laintiff."  (Docket # 138 at ¶ 6(n)).  By June 26, 2023, defendant shall identify the responsive directive by bates number.

Request No. 7 of Third Set of Demands seeks an "'unredacted copy of the photo array put together by [Groveland] Sgt. Bliss[] on 11/25/2019.'  (The photo array[] should be produced in color.  Photos of any persons not directly involved in the physical assault upon plaintiff[] may remain redacted.)."  Defendant has objected to the request on the grounds of relevancy and security concerns.  (Docket # 138 at ¶ 6(o)).  Whether or not a photographic array was prepared or used in the investigation of the fight does not appear relevant to plaintiff's claims.  The objection is sustained.  For the reasons stated above, plaintiff's second motion to compel is granted in part and denied in part.

## II.    **Plaintiff's Motion for Sanctions**

Plaintiff requests that the Court impose sanctions on defendant and his counsel for omitting certain documents from defendant's mandatory disclosures made pursuant to this

Court's May 19, 2022 Scheduling Order.  (Docket # 91).  The omitted documents include:
(1) the transcript of plaintiff's disciplinary hearing; (2) confidential information the hearing
officer received (which plaintiff alleges is recorded on tape # 19-333-2); and (3) memoranda
prepared by Sergeant Bliss regarding his interview with a confidential informant about a
photographic array dated November 25, 2019.  (*Id.*).

Defendant does not appear to dispute that the Court's May 19, 2022 scheduling
order required disclosure of these documents.  (*See also* Docket # 44 (requiring defendant to
provide copies of "any documents prepared by any employee of the State of New York[] . . . in
connection with the events from which plaintiff's claims arose including[] . . . intra departmental
memoranda, . . . witness statements, . . . and transcripts of disciplinary hearings")).  Instead,
counsel represents that she did not have the hearing transcript at the time of the initial disclosures
and subsequently chose to "hold the additional [R]ule 26 disclosures and serve them as part of
[defendant's October 20, 2022] response to the [p]laintiff's second discovery demands, as
[p]laintiff's second discovery demands included a demand for [the] hearing transcript."  (Docket
# 98 at ¶¶ 8, 9).  The record suggests that counsel received the disciplinary hearing transcript by
mid-September.  (*Id.* at ¶ 8 ("[a]fter obtaining [the] relevant hearing transcripts, I was planning to
provide [a] supplemental response to [d]efendant's Rule 26 disclosures[;] [h]owever, I was
preoccupied in obtaining documents to respond to [p]laintiff's additional demands[;] [a]lso at
that time, on September 13, 2022, [p]laintiff filed his motion to compel discovery[,] and I knew
that I would be required to file a response to the motion to compel in addition to the substantive
discovery responses")).  Although counsel should have promptly supplemented the Rule 26
disclosures, I do not find that counsel's delay warrants sanctions.  *See Huebner v. Midland
Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) ("[Rule 16(f)] vests a district court with

discretion to impose whichever sanction it feels is appropriate under the circumstances")
(internal quotations omitted), *cert. denied*, 139 S. Ct. 1282 (2019).

       As for the transcript and other documents relating to confidential information that
the hearing officer received, counsel asserts that "[s]uch hearing record includes information
about other incarcerated individuals who provided testimony in protective cover and disclosure
of such information would create security risks to the lives of such other incarcerated
individuals, general population of the facility and to the security staff." (Docket # 98 at ¶ 11).
The Court's scheduling order permitted defendant to withhold production of documents if he in
good faith believed disclosure of them "may disrupt or interfere with prison discipline or
procedures." (Docket # 44). Defendant must submit, by June 26, 2023, a sworn affidavit
containing a fuller explanation of the security concerns implicated by disclosure. Following
review of the explanation, if plaintiff wishes to pursue disclosure, he should confer with counsel
and, if they are unable to resolve the dispute, he may file a motion to compel.

       As to the memoranda authored by Sergeant Bliss, counsel asserts that "in
[defendant's] response to [p]laintiff's second discovery demands, [he] clearly indicated that [he]
. . . already provided every document relative to this request with his initial disclosures and that
no further documents or emails exist." (Docket # 98 at ¶ 13 (citing Docket # 89)). The Court
directs defendant, by June 26, 2023, to identify the responsive documents by bates numbers. On
this record, the Court declines to impose sanctions.

### III.   **Defendant's Motion for Protective Order**

       Defendant seeks a protective order relieving him of any obligation to respond to
plaintiff's Second Rule 36 Requests for Admissions (totaling twenty requests) (Docket # 120),

Second Set of Rule 33 Interrogatories (totaling ten interrogatories) (Docket # 122), and Fourth and Supplemental Rule 34 Demands for Discovery (totaling three demands) (Docket ## 123, 126), or to supplement his production in response to plaintiff's Second Motion to Compel (Docket # 127).  Defendant generally opposes further responses on two bases: (1) defendant has already provided plaintiff with an extraordinary amount of discovery and plaintiff's requests amount to harassment and intimidation; and (2) plaintiff's requests are improper and constitute a fishing expedition.[24]  (*See* Docket # 131-1).

       As to the amount of discovery, I note that plaintiff has served a total of fifty-four document demands, twenty interrogatories, and one hundred and twenty requests for admissions. (Docket ## 43 (seventeen document demands); 52 (ten interrogatories); 70 (twenty-four document demands); 77 (ten document demands); 112 (one hundred requests for admissions); 120 (twenty requests for admissions); 122 (ten interrogatories); 123 (two document demands); 126 (one document demand)).  With respect to the fifty-four document demands, this Court has narrowed many of the contested demands made in plaintiff's first and second motions to compel.[25]  Plaintiff's supplemental requests, which are before the Court as part of defendant's motion for a protective order, propound only three additional demands.  As for plaintiff's interrogatories, he has propounded twenty questions out of the permissible twenty-five.  *See* Fed. R. Civ. P. 33(a)(1).  By contrast, even though plaintiff already has served one hundred requests for admissions, he seeks to serve an additional twenty requests, albeit directed at issues different from those in the first one hundred requests.

---

[24]  I find it unnecessary to take judicial notice of the Court of Claims decision attached to counsel's declaration.  (Docket # 131-1 at 13-25).

[25]  The Court denies defendant's request to relieve him of the obligation to supplement his production in response to plaintiff's second motion to compel.

With respect to the three additional document demands at issue, plaintiff requests: (1) Facility Operations Manual ("FOM") # 216, which plaintiff alleges relates to supervision in the Groveland housing units (Docket # 140 at ¶ 38); (2) DOCCS Directive # 4006, Reporting Incarcerated Individual Attitude and Behavior; and (3) DOCCS model training instructions for corrections officers. (Docket ## 123, 126). Defendant asserts that he already provided plaintiff with Directive # 4006 (Docket # 144 at ¶ 11) – which plaintiff disputes (Docket # 140 at ¶ 39) – and that FOM # 216, which defendant admits refers to dormitory unit procedures (Docket # 144 at ¶ 11), and the model training instructions are irrelevant or not in defendant's possession. (*Id.*). Defendant also urges that

> [i]t is apparent that [p]laintiff makes an[] effort to collect all directives in a facility for some other purpose than litigating the issues raised in the amended complaint. Plaintiff has a history of violent conduct . . . and this clearly suggests that confidential information should not be released to [p]laintiff because releasing such confidential information to him would threaten the safety and security of the other incarcerated individuals and the facility personnel.

(*Id.* at ¶ 12).[26]

Plaintiff's request for FOM # 216 appears duplicative of plaintiff's Requests No. 3 and 6 in the May 9 Demands (Docket # 43 at ¶¶ 3, 6 (seeking unredacted portions of employee training manual addressing supervision of housing units and policies and directives concerning supervision of housing units in medium security facilities)), and the request for model training instructions appears duplicative of plaintiff's Request No. 3 in the May 9 Demands (*Id.* at ¶ 3 (seeking NYS DOCCS Employee Training Manual)) and Request No. 2 in his Third Set of Demands (Docket # 77 at ¶ 2 (seeking Groveland Employees Orientation Manual)).

---

[26] In support of this contention, defendant attached plaintiff's disciplinary history. (Docket # 144 at 9-17).

On this record, defendant's motion for a protective order with respect to the remaining three document demands is denied in part and granted in part. I agree that defendant need not respond to plaintiff's newer demands, although he must review his responses to the prior demands to confirm that he has previously produced all responsive documents or specifically objected to their production. As defendant represents he has already provided a copy of Directive # 4006, by June 26, 2023, he must identify that document by bates number.

With respect to plaintiff's Second Set of Interrogatories, defendant argues that the questions are unclear and do not "clearly spell[] out . . . what information he is trying to obtain." (Docket # 131-1 at ¶ 10). Defendant observes that the interrogatories: "[include] set[s] of facts that [p]laintiff himself believes, [and are] argumentative, overly broad and [improperly require] [d]efendant to adopt assumptions." (Docket # 144 at ¶ 9). Many of plaintiff's interrogatories are indeed argumentative and predicated on disputed facts. (*See*, *e.g.*, Docket # 122 at ¶ 1 ("explain in writing, how, if [defendant] was actually in [the] K3-dorm making rounds, he did not see[] or hear for five (5) through eight (8) minutes, plaintiff being gang assaulted in the middle of the dorm, by three (3) inmates, and then chased to the front of the dorm[] by an inmate w[ie]lding a mop wringer"); *id.* at ¶ 4 ("why, on the date of 11/23/2019, and after being informed by plaintiff that[] inmate Mardell Hall was in possession of a weapon[] (scalpel)[] that he threatened to cut plaintiff with, [defendant] did not contact his area supervisor with the information[] that had been shared with him[] in an effort to bring about the disarming of inmate Mardell Hall and protect plaintiff"); *id.* at ¶ 5 ("why, after being well informed of the risks to plaintiff[']s safety[] and physical well[-]being, [defendant] did not contact his area supervisors with the information, and instead ignore[d] the threats[] and risks to plaintiff[']s safety"); *id.* at ¶ 6 ("explain why, [a]fter being confronted with information suggesting that plaintiff was at risk of imminent

assault, and serious, and permanent physical injuries, he did not act to prevent an assault on plaintiff from occur[r]ing, but instead, responded to plaintiff, as identified at paragraphs 15-18 of the Second Amended Complaint")).  Defendant need not respond to such interrogatories.  *See*, *e.g.*, *E\*Trade Fin. Corp. v. Deutsche Bank, AG*, 2006 WL 3267267, \*1 (S.D.N.Y. 2006) ("[t]o the extent that [p]laintiffs seek long narrative explanations of underlying assumptions and methodologies, they have not shown that interrogatories are a more practical means of discovery than depositions"); *Donald William Fairbanks Architect, P.C. v. Fairfield Cnty. Contractors LLC*, 2014 WL 7271933, \*4 (D. Conn. 2014) (not requiring further answers to questions that request defendant to "prove a negative" or are argumentative).  Interrogatory No. 2 is also objectionable on the grounds that it is vague, and defendant need not answer it.  *See*, *e.g.*, Docket # 122 at ¶ 2 ("explain, and set forth in writ[]ing, and in detail, [defendant's] theory of events, regarding the occur[r]ences between [November 23 and November 24]").  Additionally, Interrogatory No. 10, which inquires about the number of unusual incidents that took place in Groveland Dorms K-1-K3, is similar to, but more expansive than, plaintiff's Request No. 9 in the May 9 Demands, which sought documents reflecting the number of prisoner-on-prisoner assaults in the dorms during the same time period.  (Docket # 43 at ¶ 9).  Defendant need not respond to the expanded request (Interrogatory No. 10).

Defendant must, however, respond to Interrogatories Nos. 7, 8 and 9, which seek an explanation of the factual bases supporting certain affirmative defenses asserted by defendant. "[C]ourts do not typically compel responses to interrogatories that seek a catalog of all facts or all evidence that support a party's contentions" but often "requir[e] parties to explain the factual bases for their contentions by providing the material facts upon which they will rely, but not a detailed and exhaustive listing of all of the evidence that will be offered." *Linde v. Arab Bank,*

*PLC*, 2012 WL 957970, *1 (E.D.N.Y. 2012); *Nimkoff v. Dollhausen*, 262 F.R.D. 191, 195

(E.D.N.Y. 2009) (requiring defendants to specify the facts upon which they seek to support their

[affirmative] defense).  Plaintiff's interrogatory requests for identification of witnesses and

documents defendant may rely on in support of those affirmative defenses mirror a party's legal

obligations under Rule 26(a)(1)(A) and must also be answered.  Defendant shall also answer

Interrogatory No. 3 requesting a description of the actions a corrections officer should take when

he or she is informed that an incarcerated person possesses a weapon or dangerous instrument.

       The Court grants defendant's request for a protective order as to plaintiff's second

requests for admissions.  Not only has plaintiff previously propounded an extraordinary number

of requests for admissions in this relatively non-complex lawsuit, *see Galgano v. Cnty. of*

*Putnam*, 2021 WL 3159844, *1 (S.D.N.Y. 2021) ("[c]ourts routinely disallow requests for

admission that run into the hundreds on the grounds that they are abusive, unreasonable, and

oppressive") (quotations omitted); *McLean v. Gutierrez*, 2018 WL 6118615, *3-4 (C.D. Cal.

2018) ("[w]hile Rule 36 places no limit on the number of RFAs which may be propounded by

either litigant, courts have found that propounding an excessive number of RFAs may amount to

inappropriate conduct[;] . . . a protective order . . . is particularly warranted given the remaining

excessive force claim stems from one isolated incident between plaintiff and defendant"); *see*

*also Versatile Housewares v. SAS Grp.*, 2010 WL 11601225, *1 (S.D.N.Y. 2010) ("[t]he [c]ourt

is invested with substantial discretion under Rule 36 ... to determine the propriety of plaintiff's

requests") (quotations omitted), but the majority of the second set of requests appear either

improper or unlikely to narrow the issues in this matter (*e.g.*, they request admissions concerning

whether particular documents in the record contain certain statements and admissions concerning

compound factual assertions), *see*, *e.g.*, *Hill v. Payne*, 2022 WL 875924, *8 (W.D.N.Y.) ("the

facts stated within [a request for admission] must be singularly, specifically, and carefully detailed[;] . . . [m]any of [plaintiff's] requests do not meet this standard; rather, they . . . embrace compound subjects, actors, events and assertions") (internal quotations and brackets omitted), *report and recommendation adopted by*, 2022 WL 875160 (W.D.N.Y. 2022); *K.C.R. v. Cnty. of Los Angeles*, 2014 WL 3433772, *3-4 (C.D. Cal. 2014) ("[w]here requests for admission do not narrow the range of issues for trial but are unreasonably cumulative and duplicative of other discovery taken in the case, the requests do not serve the purpose of Rule 36(a) and are properly subject to objection[;] . . . [r]equests asking [a party] to admit that a report or letter includes a particular quoted passage are improper"); *Hood v. S. Whidbey Sch. Dist.*, 2013 WL 1898214, *2 (W.D. Wash. 2013) ("[t]he RFAs ask the [defendant] to confirm the contents of documents, a wholly useless exercise[;] . . . [t]he vast majority of the RFAs would appear to have little or no value in advancing this litigation to a resolution"), *aff'd*, 605 F. App'x 665 (9th Cir. 2015).

Finally, defendant asks for a protective order restricting plaintiff from serving any additional demands absent advance permission from the Court. (Docket # 131-1 at ¶ 19). The Court declines to do so at this time, but expects that the parties will concentrate their efforts on producing and addressing the discovery requests that are the subject of this decision. Given the substantial discovery that has been requested by plaintiff – both in terms of the number and the scope of the demands served – the Court expects additional discovery requests, if any at all, will be very limited in number and narrow in scope. Therefore, the Court grants in part and denies in part defendant's motion for a protective order.

## **REPORT & RECOMMENDATION**

Defendant moves the Court to dismiss plaintiff's complaint for failure to prosecute under Rules 37 and 41(b) of the Federal Rules of Civil Procedure. (Docket # 141).

Defendant bases his motion on plaintiff's "continuous[] refus[al] to authorize [defendant] access to his medical records" and plaintiff's conduct during his deposition, which allegedly included "fail[ing] to respond to questions" and prematurely and abruptly departing "without any prior notification." (Docket ## 141-1 at ¶ 3; 141-2 at 4). Likely in anticipation of defendant's motion, plaintiff wrote a letter to the Court detailing his perspective on the deposition, which the Court received the same day that defendant's motion was filed.[27] (*See* Docket # 142).

I find that denial of defendant's motion to dismiss is warranted both on procedural and substantive grounds. On April 7, 2023, this Court entered an Order prohibiting the parties from filing any further motions, with limited exceptions, until it issued a decision on the nine pending motions. (Docket # 137). Two weeks later, without seeking or obtaining permission, defendant filed the pending motion to dismiss.[28] (Docket # 141). Because defendant violated this Court's Order by filing the motion without authorization, it should be denied on procedural grounds.

Denial of defendant's motion to dismiss is also justified for substantive reasons. Defendant has moved for dismissal pursuant to Rules 37 and 41(b) for failure to prosecute. Rule 37 permits dismissal where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Despite citing Rule 37(b), defendant has not specified how plaintiff's

---

[27] Plaintiff requests that the Court review the video recording of the deposition. (*See* Docket # 142 at 3, 4). Because the deposition transcript (Docket # 141-1 (Exhibit A)) is sufficient for the purposes of addressing this motion, the Court denies the request. Because the Court does not need to "investigate" this matter further, the Court also denies plaintiff's request for assistance in obtaining security footage of his deposition. (Docket # 147 at 4).

[28] In the April 7, 2023 Order, the Court reprimanded plaintiff for using inappropriate and abusive language, particularly towards defense counsel, and ordered him to cease and refrain from offensive and *ad hominem* attacks in his filings and communications. (Docket # 137). Several of defendant's subsequent filings suggest that he may not be aware of the Court's Order. For example, without acknowledging the Court's Order or questioning its adequacy, counsel has noted that *pro se* litigants are "subject to the rules of decorum," argued that the Court "should not . . . encourage[] and entertain[]" plaintiff's most-recent offending letter, and requested that the Court strike the letter from the docket. (Docket ## 138 at ¶¶ 7, 8; 144 at ¶ 8). Because the Court has addressed plaintiff's offensive conduct, defendant's requests for different relief, such as the striking of plaintiff's filings, are denied.

conduct allegedly violated a court order, nor has he cited caselaw for the proposition that Rule 37 authorizes dismissal for failure to prosecute, which is defendant's articulated justification for the requested dismissal order. (*See* Docket # 141-1 at ¶¶ 1, 12). *Cf. Heendeniya v. St. Joseph's Hosp. Health Ctr.*, 830 F. App'x 354, 357-58 (2d Cir. 2020) (summary order) (acknowledging that Rules 37 and 41(b) have common factors but differentiating between failure to prosecute and failure to comply with discovery orders). Therefore, I recommend that the district court deny defendant's motion pursuant to Rule 37.

Rule 41(b) dismissal "is the harshest of sanctions and is properly used only in extreme situations." *Id.* at 357 (quotations omitted). In considering such a request, a court should assess: (1) whether the plaintiff's failure to prosecute caused a delay of significant duration; (2) whether plaintiff was given notice that further delay would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) the balance between the court's interest in managing its docket with plaintiff's interest in receiving a fair chance to be heard; and (5) the efficacy of lesser sanctions. *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). The first factor "breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." *Id.* at 255.

As it pertains to the release of his medical records, and for the reasons described above, I do not find that plaintiff revoked his prior authorization in bad faith. Significantly, on October 13, 2022, plaintiff communicated his willingness to sign a more limited HIPAA release form in connection with his opposition to defendant's motion to compel. (Docket # 80 at ¶ 11). Defendant chose not to respond to this proposed compromise.[29] On this record, which includes

---

[29] For this reason, plaintiff is not to blame for counsel's decision to proceed with plaintiff's deposition "with the minimal other documents she had thus forth obtained." (Docket # 141-2 at 6).

the Court's approval of the more limited release, I do not find that plaintiff's rescission of the signed release evidences a disinterest in this litigation or amounts to a failure to prosecute or gamesmanship.

As for the deposition, defendant's accounting of what transpired is not supported by review of the transcript itself. According to counsel, plaintiff was "evasive," refused to answer many of the questions, was unwilling to follow instructions, ranted, and became argumentative. (Docket # 141-1 at ¶¶ 4, 5). Assistant Attorney General Matthew Brown[30] intervened and, as characterized by counsel, "reminded [p]laintiff [of] the meaning of the deposition and the expectations" and requested plaintiff to calm down, but plaintiff was "not willing to listen" and "abruptly departed" the deposition "without any prior notification." (*Id.* at ¶¶ 5, 9).

To the contrary, although the transcript shows that plaintiff made "speaking" objections and questioned counsel about the basis of some of the questions and exhibits, plaintiff ultimately answered all of counsel's questions with some redirection. (*See, e.g.*, Docket # 141-1, Ex. A at 33 (noting his objection while acknowledging that he would have to answer); *id.* at 37-38 (arguing that questions about past injuries were irrelevant but affirming he had been injured); *id.* at 36-43 (raising concerns about counsel's inherent suggestion that plaintiff engaged in "violent conduct" but ultimately answering the questions)). Plaintiff's conduct, while not exemplary, hardly exhibits such a lack of cooperation as to equate to a "failure to participate in discovery" or an "abandonment" of his claims. (*See* Docket # 141-2 at 4, 5).

---

[30] Mr. Brown attended the deposition but has not appeared in this case.

The deposition concluded following a disagreement between plaintiff and Ms.
Halliyadde about plaintiff's desire to answer more expansively one of counsel's questions.[31]  Mr.
Brown interjected that plaintiff's "understanding of how a . . . deposition works [was]
completely wrong[,] [a]nd [that] if [plaintiff] continue[d] in this manner, [defendant would] cut
th[e] deposition off and move to dismiss the case." (Docket # 141-1, Ex. A at 56).  The
deposition transcript, through the use of ellipses, suggests that plaintiff and Mr. Brown began
speaking at the same time, at which point Mr. Brown stated, "Let me finish speaking.  You shut
up.  Let me finish speaking." (*id.*) – language that counsel's declaration conveniently omits.  (*See*
Docket # 141-1 at ¶ 5).  Counsel's intemperate and inappropriate command unsurprisingly
prompted plaintiff to object to being treated disrespectfully and to indicate that he was done
answering questions.  (*Id.*).  After Mr. Brown told plaintiff to control himself, "be quiet," and
that plaintiff "need[ed] to leave" (*id.* at 58), plaintiff responded that he would seek sanctions
against Mr. Brown, to which Mr. Brown twice mocked, "You're making me laugh" (*id.* at 59).
Mr. Brown eventually declared, "All right.  We're cancelling this deposition and we're moving
. . . to dismiss.  That's enough."  (*Id.* at 59-60)*.*

          This record reveals that both sides became argumentative and disrespectful.
Although plaintiff stated that the deposition was over several times (*id.* at 56),[32] it was Mr.
Brown who first threatened to terminate the deposition, and he who in fact ended it less than an
hour after it began (Docket # 141-1, Ex. A at 56, 59-60).  On this record, counsel plainly bears

---

[31]  Plaintiff initially observed that his answer was "going to be . . . drawn out because . . . [he] want[ed] to
give [counsel] full clarity of . . . the situation." (Docket # 141-1, Ex. A at 52).  When counsel attempted to redirect
plaintiff to answer the precise question asked, plaintiff began to answer, albeit in a lengthy and narrative fashion.
(*Id.* at 52-53).  Counsel interrupted him saying that plaintiff "answered [her] question enough."  (*Id.* at 54).  At that
point, plaintiff stated that it was his deposition as well, and both sides became argumentative.  (*Id.* at 54-55).

[32]  Plaintiff's references to ending the deposition further undermine counsel's representation that plaintiff
"abruptly departed the deposition without any prior notification." (Docket # 141-1 at ¶ 9).

responsibility, along with plaintiff, for the suspended deposition, and it would be unduly harsh to punish plaintiff by ordering dismissal of his action.[33]  As stated, dismissal is an extreme sanction, and alternative remedies are appropriate.  Accordingly, I recommend that that the district court deny defendant's motion to dismiss for failure to prosecute.[34]

In the alternative, defendant requests that the Court: (1) issue an order compelling plaintiff to complete his deposition; (2) provide instructions to plaintiff regarding appropriate deposition conduct and possible sanctions – including dismissal – for failure to comply; (3) stay the proceedings until the deposition has been completed and plaintiff has produced any documents requested during the deposition; and (4) order plaintiff to reimburse defendant for the deposition costs.  (Docket # 141-2 at 6-7).  This Court orders the parties to complete the deposition by July 14, 2023.  The Court denies defendant's request for an order requiring plaintiff to reimburse deposition costs and/or staying the proceedings.

Some guidance on appropriate deposition conduct is appropriate.  While review of the transcript indicates that plaintiff ultimately answered defendant's questions, the path to those answers was often unnecessarily circuitous or contentious.  If a question calls for and may be answered with a "yes" or "no," the deponent must answer the question in that fashion; if plaintiff believes that it cannot be answered that way, he must respond that it cannot be answered in such a fashion and concisely explain why not.  Plaintiff must answer only the question that is being asked without volunteering information that has not been asked for.  In other words, if a question asks what was said in a conversation, the answer should not include a description of events.

---

[33]  Plaintiff's alleged failure to prosecute is further belied by his frequent contact with opposing counsel and the Court concerning the status of discovery and his filing of numerous motions.

[34]  For these reasons, this Court declines to issue an order to show cause requiring plaintiff to explain why his case should not be dismissed.  (*See* Docket # 141-2 at 7).

(*See*, *e.g.*, Docket # 141-1, Ex. A at 52-53). And, defense counsel must reasonably allow plaintiff to complete his answer to the question asked.

To the extent that plaintiff believes that a question is objectionable – for example, because it seeks irrelevant or inadmissible testimony – he should concisely note the objection in a nonargumentative manner – such as, "objection, relevance" – and answer the question.[35] *See* Fed. R. Civ. P. 30(c)(2) ("[a]n objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection"). Defendant is not required to explain the relevancy of the question or explain how plaintiff's answer may be used in the case.

This Court expects the parties and counsel to adhere to the Federal Rules of Civil Procedure, the Court's guidance offered herein, and the applicable rules summarized above, as well as general rules of civility. Failure of either side to abide by applicable rules and standards of civility may result in the imposition of sanctions, including case dispositive sanctions, financial sanctions, or other appropriate sanctions. *See* Fed. R. Civ. P. 30(d)(2) ("[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent").

---

[35] Very few exceptions exist to the general rule requiring a deponent to answer questions asked at a deposition, even if objections to the questions are noted. However, a deponent may decline to answer a question that seeks privileged information as to which the deponent plans to seek a protective order. Fed. R. Civ. P. 30(c)(2) ("[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)"). If an answer would disclose privileged information, plaintiff may object and refuse to answer on privilege grounds. "Thereafter, the parties may resolve the dispute in one of two ways. First, the deponent may seek a protective order pursuant to Rules 26(c) and 30(d). Alternatively, the party taking the deposition may move pursuant to Rule 37(a)(2)(B) to compel the testimony it seeks." *Luc Vets Diamant v. Akush*, 2006 WL 258293, *1 (S.D.N.Y. 2006). Review of the transcript of the suspended deposition does not reveal, at least to the Court, that any questions were posed that sought privileged information.

## <u>CONCLUSION</u>

For the reasons stated above, plaintiff's motions for conferences and to extend page limits **(Docket ## 104, 105, 139)** are **DENIED** and the parties' motions to compel **(Docket ## 65, 72, 127)** and defendant's motion for a protective order **(Docket # 131)** are **GRANTED in part and DENIED in part**.  As directed herein, defendant is instructed to provide or supplement his discovery responses by **June 26, 2023**.  Plaintiff is directed to promptly provide defendant with a revised HIPAA release regarding his medical records and either promptly provide his treating providers authorization to release his mental health records to defendant or, by **June 26, 2023**, submit a sworn affidavit withdrawing any claim for non-garden variety emotional distress damages as further directed herein.  The parties are directed to complete plaintiff's deposition by **July 14, 2023**.  In addition, plaintiff's motion for the appointment of counsel **(Docket # 65)** is **DENIED without prejudice** at this time.  It is plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se*.  Further, plaintiff's motion for sanctions **(Docket # 91)** is **DENIED.**

I further recommend to the district court that defendant's motion to dismiss **(Docket # 141)** be denied.

Finally, I lift the stay imposed by this Court's order dated April 7, 2023 prohibiting the parties from filing further motions or requests for relief, or propounding additional discovery requests, until the Court rendered a decision on the pending motions addressed herein.  (Docket # 137).

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
       May 26, 2023

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(d) and Local Rule 72(b).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       May 26, 2023