UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT ADAMS, III,

                     Plaintiff,

      v.

CORRECTIONS OFFICER JUSTIN TAYLOR,
Groveland Correctional Facility,

                    Defendant.

_____

<u>DECISION & ORDER</u>

21-CV-6056EAW

Plaintiff Robert Adams, III, filed this action against Corrections Officer Justin Taylor pursuant to 42 U.S.C. § 1983, alleging that his First, Eighth, and Fourteenth Amendment rights were violated while incarcerated at the Groveland Correctional Facility ("Groveland") in November 2019. (Docket # 79 (second amended complaint)). On January 26, 2024, this Court issued a Decision and Order (the "January 26 Decision and Order") directing defendant, *inter alia*, to provide the Court certain documents for in camera review to determine whether they should be produced. (Docket # 257). On February 14, 2024, defendant's counsel filed a declaration appending various documents, some of which were also filed publicly and some of which were provided only to the Court for review. (Docket # 260). On February 26, 2024, plaintiff responded to defendant's docketed submission. (Docket # 264). The Court's rulings on the production of documents are set forth below.

      The January 26 Decision and Order also required defendant to review and amend his answers to certain requests for admission ("RFAs"). (Docket # 257 at 8). As an exhibit to his February 14, 2024 filing, defendant provided supplemental responses to the specified RFAs.

(Docket # 260 at 71-77).  On March 11, 2024, plaintiff moved for an order deeming the matters at issue admitted on the grounds that defendant's responses remain deficient.  (Docket # 266).  On April 10, 2024, defendant filed his opposition (Docket # 278), and on April 25, 2024, plaintiff filed his reply (Docket # 282).  This motion is also addressed below.

**DECISION & ORDER**

I.      **The Court's In Camera Review of Documents**

Defendant's February 14 filing consists of counsel's declaration; a declaration of Nathanial D. Gilles, a Colonel with the Department of Corrections and Community Supervision ("DOCCS"); unredacted and redacted versions of plaintiff's keep away list (submitted for in camera review only); certain sections of the 2019 Employees' Manual (submitted for in camera review only); the Unusual Incident Reporting System Manual (submitted for in camera review only); plaintiff's third discovery demand; Directive # 9310 – Releasees and Incarcerated Individuals as Confidential Informants (submitted for in camera review only); Directive # 4021 – Incarcerated Individual Reception/Classification; redacted copies of prisoner assault documents from 2018; defendant's amended responses to plaintiff's RFAs; and, an unredacted transcript of Sergeant Hermann-Myers's testimony at plaintiff's disciplinary hearing.[1]  (Docket # 260).  On March 21, 2024, defendant also docketed a letter to plaintiff providing an unredacted version of Directive # 0700 – Office of Special Investigations (OSI).  (Docket # 269).  The documents submitted for in camera review are addressed below.

---

[1]  Counsel for defendant is instructed to contact the Clerk's Office by no later than **May 24, 2024**, to coordinate the sealed filing of Exhibits B, C, D, and F on the record.

A.    __Keep Away List__

In several prior decisions, this Court addressed plaintiff's request for his "keep away" list.  In its May 26, 2023 Decision and Order (the "May 26 Decision and Order"), the Court stated that although plaintiff's demand as drafted was overly broad, "[w]hat does appear clearly relevant[] . . . is the presence or absence of any of the individuals who allegedly attacked plaintiff on plaintiff's 'keep away' list prior to November 24, 2019."  (Docket # 150 at 18-19). Therefore, defendant was "directed to produce a redacted copy of plaintiff's keep away list as of November 24, 2019, or to confirm in writing that a diligent search ha[d] been conducted and no responsive documents exist."  (*Id.* at 19).

On June 20, 2023, defendant moved, among other things, for reconsideration of this directive, supported by an affidavit from Gilles affirming that Mardell Hall, Mark Rounds, and Brandon Anderson were not on plaintiff's keep away list on or before November 24, 2019. (Docket # 170 at 3, ¶ 9).  The Court denied reconsideration, observing:

> Although the affidavit provides the information sought, it does not specifically comply with the Court's directive, which accounted for the safety and security concerns presented in opposition to plaintiff's original motion to compel by authorizing production of a redacted copy of the keep away list.  Defendant has not provided substantive information that the Court did not consider in arriving at its prior conclusion and is therefore not entitled to reconsideration. Consistent with the May 26 Decision and Order, defendant is directed to provide a redacted copy of plaintiff's keep away list on or before February 16, 2024.

(Docket # 257 at 5 (emphasis and footnote omitted)).

In response, defendant has provided the Court with three pages of a keep away list, redacted and unredacted,[2] and requests that the Court restrict plaintiff's review of the

---

[2] Significantly, these pages confirm that Hall, Anderson, and Rounds were not on plaintiff's keep away list as of November 24, 2019.  The pages provided refer only to individuals who were placed on plaintiff's keep away list *after* November 24, 2019.  Because the Court previously ordered defendant to produce a redacted version of

redacted version to a controlled setting.  (*See* Docket # 260 at 9, ¶ 7).  In support of this request, defendant has submitted a second Gilles affidavit, in which Gilles represents that "[a]llowing an incarcerated individual to possess a keep away list, albeit a redacted version that identifies security concerns with custodial placement, would diminish the Department's ability to safeguard the privacy of third parties and may subject them to unwarranted attention within a custodial setting[;] [o]fficial records containing the names . . . of known separatees place[] these individuals at risk of retaliation and subjects the Department to potential liability should they be injured."[3]  (*Id.* at 9, ¶ 6).

The redacted pages that defendant proposes to produce to plaintiff reflect the names of individuals who were on his keep away list as of a date subsequent to the events that underlie this lawsuit.  This Court agrees that, considering the security concerns posed by an inmate's possession of a keep away list, even one that discloses only names of other inmates, plaintiff should be permitted to review the redacted pages only in a controlled setting and to retain the list with his personal property in a non-public place, presumably, where the photographs that the Court required be provided are retained.  On or before **May 24, 2024**, defendant must submit a sworn affirmation confirming that plaintiff has had the opportunity to review the redacted list in a controlled setting and has been permitted to retain the list with his personal property in a non-public place.  (*See id.* at 9, ¶ 7).

---

plaintiff's keep away list as of November 24, 2019, the Court infers that no individuals were on plaintiff's keep away list as of November 24, 2019.  On or before **May 24, 2024**, defendant must provide the Court with a sworn affidavit confirming the accuracy of that inference.

[3]  Gilles also asserts that "even an unredacted [*sic*] copy of a keep away list is considered to be contraband within a correctional facility[,] . . . [possession of which would] subject [plaintiff] to discipline."  (Docket # 260 at 8, ¶ 5).

B.      **Employee Manual**

On May 9, 2022, plaintiff served his first demand for the production of documents.  (Docket # 43).  Request No. 3 stated: "Produce in its entirety[] an 'unredacted copy' of the NYS DOCCS Employee Training Manual."  (*Id.* at 3).  On July 20, 2022, defendant produced, without waiving various stated objections, a redacted version of the Revised 2019 Employees' Manual.  (Docket # 57 at 5, 86-133).  Specifically, defendant produced the entirety of the 2019 Employees' Manual but redacted, in whole or in part, Section 8 (Supervision of Inmates), Section 9 (Disciplinary Control of Inmates), Section 10 (Escapes, Inmate Disturbances, and Other Emergencies), Section 11 (Supervision of Inmate Housing Units), Section 16 (Supervision of Gate Areas), Section 17 (Supervision of Wall/Tower Areas), Section 18 (Transportation of Inmates), Section 20 (Firearms and Arsenals), Section 23 (Warrants, Arrests, Transportation of Parolees), and Section 24 (Confiscation of Property, Weapons or Contraband From a Parolee/Releasee).  (*Id.* at 86-133).

Plaintiff thereafter propounded additional requests that, although worded differently, appeared duplicative of this request.  (*See* Docket # 150 at 35).  In addressing these demands, in its May 26 Decision and Order, the Court directed defendant to confirm that he had previously produced all documents responsive to plaintiff's request for NYS DOCCS employee training manuals or specifically object to their production.  (*Id.* at 35-36).  In response, defendant produced a declaration from Scott Ranze, a DOCCS Lieutenant, explaining the reasons for producing a redacted training manual.  (Docket # 178 at 17-18, ¶ 6).  Defendant eventually clarified that there are no other "employee training manuals[] or employee orientation manuals at DOCCS" other than the one that was produced.  (Docket # 236 at 16-17, ¶ 6).

In its January 26 Decision and Order, the Court directed defendant to provide certain sections of the 2019 Employees' Manual to the Court "[i]n order [for it] to assess the propriety of defendant's withholding or redaction" of the manual.  (Docket # 257 at 14).  In its February 14 production to the Court, defendant included the requested unredacted sections of the 2019 Employees' Manual – specifically, Sections 8, 9, 10, and 11.  Defendant also submitted the Gilles declaration, which: (1) refers to the "sensitive security material and operation practices found within" the manual; (2) argues that "the only potentially relevant and proportional material would be sections 4.6; 7.9; 8.4, and the Workplace Violence Prevention Program sections"; and, (3) requests that the Court "deny access to the non-responsive portions [of the manual] as their probative value is substantially outweighed by the danger [production would] present[] within a correctional facility."  (Docket # 260 at 11-12, ¶¶ 13, 14, 15).  Counsel also requests the Court's permission "to allow a controlled review [by plaintiff] of the relevant sections 4.6; 7.9; 8.4; and the Workplace Violence Prevention Program sections."  (*Id.* at 2, ¶ 6).

Defendant's submission is perplexing.  As an initial matter, on July 20, 2022, defendant produced the manual, with only certain sections redacted, and without raising the perceived need for plaintiff to review it in a controlled setting.  (Docket # 57 at 5, 86-133).  Moreover, defendant has already produced more than the few identified provisions that he now contends are the "only potentially relevant and proportional material."  Therefore, to the extent that defendant now objects to the production of provisions already produced, that objection is overruled.

Upon review, I find that the following previously redacted provisions are relevant and must be produced on or before **May 24, 2024**: 8.1, 8.4, 8.16, 8.17, 8.19, 9.1(a-f, i), 10.1, 10.2, and 10.5.  Finally, the Court is unclear which sections comprise "the Workplace Violence

Prevention Program" but, upon defendant's acknowledgement that they are relevant, they too shall be produced to plaintiff.

      **C.**    <u>**Directive # 9310**</u>

            In prior motion papers, plaintiff asserted that defendant wrongfully withheld Directive # 9310 - Releasees and Incarcerated Individuals as Confidential Informants.  He contends that Directive # 9310 is responsive to his request for the "NYS DOCCS Policy[] and procedure(s)[] relative to the receipt[] and evaluation of confidential information[] given by a 'confidential informant,' relative to a fight investigation, etc., or a disciplinary hearing."  (Docket ## 70 at 2; 239 at 11).  The Court ordered defendant to provide the Court with Directive # 9310 for in camera review.  (Docket # 257 at 14-15).  The Gilles affidavit accompanying the February 14 submission states that this directive is considered contraband within the correctional system and that it "outlines [the] procedures for staff to review, approve, and oversee incarcerated individuals and individuals under Community Supervision of the Department for the purpose of engaging in confidential investigative work for other law enforcement agencies."  (Docket # 260 at 12, ¶¶ 16, 17).  Therefore, he argues, not only would production of the directive pose security risks, but the directive itself is "irrelevant to the issues involved in this litigation."  (*Id.* at 12, ¶ 17).

            Upon review of the directive, I find that it is not responsive to the request as it pertains only to individuals who provide information to outside law enforcement agencies; in addition, it generally refers to releasees under DOCCS supervision.  Moreover, it does not relate to the steps taken to evaluate the accuracy of the confidential information provided.  Therefore, I determine that defendant does not need to produce Directive # 9310.

D.      <u>**Unusual Incident Reporting System Manual**</u>

In its May 26 Decision and Order, the Court considered plaintiff's demand for the Unusual Incident Reporting System Manual (the "Manual").  The Court overruled any relevancy objection "insofar as such a manual may indicate that corrections officers are required to file unusual incident reports when they learn that an inmate has been threatened and/or that another inmate possesses a weapon."  (Docket # 150 at 29 n.21).  Because defendant failed to comply with the Court's instruction to produce responsive documents relating to reports by an inmate of threats or weapons possession, or otherwise provide an affidavit explaining any related redactions, the Court reaffirmed its directive in its January 26 Decision and Order.  (Docket # 257 at 16).  The Court also clarified that "[p]ortions of the manual that are not specifically responsive – such as portions relating to the information technology system – need not be produced."  (*Id.*).

In response, defendant has provided the Court with the Manual for in camera review.  The Gilles affirmation states that the Manual "does not specifically address whether an officer is required to file report(s) when they learn that of a threat, or a weapon."  (Docket # 260 at 9, ¶ 8).  Nonetheless, he appears willing to produce – albeit in a controlled setting – "the redacted portions of Appendix A and the Guidelines for Filing of the UIRS."  (*Id.* at 11, ¶ 12).

Having reviewed the Manual, I find that the Manual does not indicate or reflect that a corrections officer is required to file an Unusual Incident Report when an inmate reports a threat by another inmate or reports that a fellow inmate possesses a weapon.  As the Manual indicates, it is a user guide for the unusual incident, use of force, and contraband computer reporting systems.  It need not be produced beyond the redacted version of Appendix A and the Guidelines defendant has indicated he is willing to produce, which shall be provided to plaintiff

for review in a controlled setting by no later than **May 24, 2024**.  Insofar as plaintiff requested

the Manual in an attempt to determine whether written policies and procedures exist reflecting

that reports must be prepared when a DOCCS employee learns that an inmate has been

threatened and/or that another inmate possesses a weapon,[4] in order to clarify the record on that

issue, defendant must confirm through a sworn affirmation on or before **May 24, 2024**, that no

responsive documents exist or identify by bates number responsive documents that previously

have been produced.  Defendant shall also confirm by that date that plaintiff has had the

opportunity to review the redacted versions of Appendix A and the Guidelines in a controlled

setting and has been permitted to retain that material with his personal property in non-public

place.

        **E.**        <u>**Additional Requests from Plaintiff**</u>

        Plaintiff's response to defendant's submission contains two additional requests.

First, plaintiff requests that the Court direct defendant to file all relevant documents on the

docket for use at any future hearings or at trial.  (Docket # 264 at 9, ¶ 30).  Second, he requests

that the Court require defendant to produce the audio recording of Sergeant Hermann-Myers's

testimony from plaintiff's disciplinary hearing.  (*Id.* at 10, ¶¶ 33-35).

        The Court declines to issue an order requiring defendant to file all relevant

documents on the docket.  Review of the docket suggests that counsel is familiar with the

requirement to file "all discovery materials in cases with incarcerated *pro se* litigants" pursuant

to Rule 5.2(f) of the Local Rules of Civil Procedure for the Western District of New York.  To

---

[4] Indeed, plaintiff previously requested any policies or directives relating to the "steps to be taken" when a correctional officer "is on notice that[] an [i]ncarcerated person . . . under his care, custody and control[] is in possession of a weapon[] or a dangerous instrument capable of being used as a weapon."  (Docket # 122 at 3). Plaintiff also requested "the NYS DOCCS policy[] and practice relative to the protective measures to be taken by DOCCS staff when a prisoner provides specific identifying information regarding the source of a threat to his/her physical safety."  (Docket # 43 at 3).

the extent plaintiff believes that a document that should be docketed has not been, he should first raise that issue with counsel and attempt to resolve it.

As to the audio recording of Sergeant Hermann-Myers's testimony, the Court's January 26 Decision and Order directed defendant to provide an affidavit justifying the redactions made to the produced transcript or submit an unredacted copy.  (Docket # 257 at 13 n.9).  Defendant appended the entirety of Sergeant Hermann-Myers's testimony to his February 14 filing.  (Docket # 260 at 80-83).  Because defendant has produced the unredacted transcript, the Court perceives no reason to protect the audio recording from disclosure.  Accordingly, defendant shall arrange for plaintiff to review an unredacted audio recording and shall permit plaintiff to retain the recording with his personal property, in the same manner as he is permitted to retain the photographs and redacted keep away list.  By **May 24, 2024**, defendant is instructed to file an affidavit affirming that he has made the necessary arrangements to allow plaintiff to review the audio recording of Sergeant Hermann-Myers's testimony from plaintiff's disciplinary hearing and to retain a copy of the recording with his personal property in a non-public place.

## II.     Plaintiff's Motion Regarding Defendant's Revised RFA Responses

As stated in the January 26 Decision and Order, plaintiff served defendant with one hundred requests for admission.  (Docket # 257 at 6 (citing Docket # 112)).  Defendant initially denied many of those requests; after plaintiff challenged those denials on the grounds that defendant lacked personal knowledge, defendant revised many of his answers to state that he lacked sufficient information to admit or deny the matters asserted.  (*Id.* at 7 (citing Docket ## 119, 172, 176)).  In accordance with Rule 36 of the Federal Rules of Civil Procedure, the Court ordered defendant to review and amend his answers to such RFAs to "describe[] his

inquiries or, in most cases, why he cannot admit or deny the RFA." (*Id.* at 8). As part of defendant's February 14 filing, defendant served supplemental responses to plaintiff's RFAs, in many cases returning to simple denials of many of the RFAs that remain at issue. (*See* Docket # 260 at 71-77).

Plaintiff requests that the Court deem the disputed RFAs admitted. Specifically, plaintiff reiterates that defendant cannot deny the RFAs at issue because the matters asserted occurred outside of his presence thereby depriving him of personal knowledge as to whether they occurred. (Docket # 266 at 2). Plaintiff contends that defendant changed his answers to "pure denials" in order to circumvent the Cout's order that defendant describe the inquiries made into the stated matter. (*Id.* at 3). Plaintiff also states that such responses were made in bad faith because defendant is "obligat[ed] to adequately and appropriately respond to plaintiff[']s RFAs[] in accordance with the evidence in the record," and there is no evidence in the record to support a denial of the matters asserted. (*Id.* at 2).

Defense counsel has affirmed that "[d]efendant made a reasonable inquiry[] [of] the information known or readily available to him and truthfully believe[s] his inquiry was sufficient" to enable him to deny the matters asserted. (Docket # 278 at ¶¶ 4, 5, 7). Unsurprisingly, plaintiff finds that proposition dubious. (*See* Docket # 282 at 2-3 ("Defendant claims that, after re-review of all documents on these issues, [he] can comfortably deny the truth of the matters in RFAs # 64-68[;] ... what documents are those? What are the documents in the record[] that dispute plaintiff[']s allegations that[] he was assaulted . . . ? Where are they? Did I miss something? No! Defendant[']s attempted theory[] is fictional, and[] the documents do not exist")). As the Court stated in its January 26 Decision and Order, however, Rule 36 permits "a party [to] deny a request for admission without giving any further explanation," *Dentsply Int'l*

*Inc. v. Dental Brands for Less LLC*, 2017 WL 11567699, *1 (S.D.N.Y. 2017), if the party has a "reasonable ground to believe that it might prevail on the matter," *Ohio Cas. Ins. Co. v. Twin City Fire Ins. Co.*, 2020 WL 1698593, *3 (E.D.N.Y. 2020) (citing Fed. R. Civ. P. 37(c)(2)). Although a party may dispute whether reasonable grounds for a denial exist, a party is not "required to accept even . . . uncontradicted deposition testimony or declarations of hostile or interested witnesses as true." *Id.* at *4. Moreover, "a motion to determine the *sufficiency* of a response is not to be used as an attempt to litigate the *accuracy* of a response." *See Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 1457142, *5 (S.D.N.Y. 2009) (internal quotations omitted).

       For this reason, the Court finds that defendant's amended responses to the RFAs are sufficient and denies plaintiff's request to deem the matters admitted.

## **<u>CONCLUSION</u>**

       For the reasons stated above, on or before **May 24, 2024**, defendant is directed to produce to plaintiff Sections 8.1, 8.4, 8.16, 8.17, 8.19, 9.1(a-f, i), 10.1, 10.2, and 10.5 of the 2019 Employees' Manual, along with the sections that comprise the Workplace Violence Prevention Program. Likewise, on or before **May 24, 2024**, defendant must submit a sworn affirmation confirming that (1) plaintiff has had the opportunity to review in a controlled setting (a) the redacted version of his keep away list, (b) the audio recording of Sergeant Hermann-Myers's testimony from plaintiff's disciplinary hearing, and (c) the redacted portions of Appendix A of the Manual and the Guidelines for Filing of the UIRS, and has been permitted to retain the list, the recording, and the portions of the Manual and Guidelines with his personal property in a non-public place; (2) no individuals were on plaintiff's keep away list as of November 24, 2019;

and, (3) no responsive documents exist that reflect that written reports must be prepared when a DOCCS employee learns that an inmate has been threatened and/or that another inmate possesses a weapon, or identifying by bates number responsive documents that previously have been produced.  By **May 24, 2024**, defendant is also directed to contact the Clerk of the Court to coordinate the sealed filing of Exhibits B, C, D, and F.

Plaintiff's motion to deem defendant's answers to his RFAs admitted **(Docket # 266)** is **DENIED**.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
        May 7, 2024